**FILED**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**7/1/15**

**CECILE FOY GSANGER, CLERK**
**BY PFowler**

ACCEPTED
13-15-00038-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/1/2015 4:53:43 PM
CECILE FOY GSANGER
CLERK

CAUSE NO 13-15-00038-CV
IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI/EDINBURG

RECEIVED
FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/1/2015 4:53:43 PM
CECILE FOY GSANGER
Clerk

## ANTONIO ARRIAGA AND INEZ LARA ROSALES, APPELLANTS

## VS.

## OBDULIA MARTINEZ ARRIAGA, ANTONIO MARTINEZ ARRIAGA, JR., AND REYNA LUISA MARTINEZ ARRIAGA, APPELLEES

On Appeal from the 197TH DISTRICT COURT
WILLACY COUNTY, TEXAS
Trial Court Cause No. 2014-CV-0100-A

## APPELLANTS' BRIEF

Honorable Juan Angel Guerra
State Bar No. 08581320

Law Office of Juan Angel Guerra
1021 Fair Park Blvd.
Harlingen, Texas 78550
Telephone (956) 428-1600
Fax (956) 428-1601
juanangelguerra1983@gmail. Com
ATTORNEY FOR APPELLANTS

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

The presiding judge was the Hon. Judge Migdalia Lopez, of the 197th District Court, 576 West Main, Raymondville, Willacy County, Texas 78580.

1. The Appellants are Antonio Arriaga and Inez Lara Rosales.

2. The Attorney for the Appellant is the Hon. Juan Angel Guerra, 1021 Fair Park, Harlingen, Cameron County, Texas 78550.

3. Appellees are Obdulia Martinez Arriaga, Antonio Martinez Arriaga, Jr., and Reyna Luisa Martinez Arriaga.

4. The Appellees were represented by the Hon. Gene McCullough, P. O. Box 2244, Harlingen, Cameron County, Texas 78551. 956-423-4976 Fax, SB#00794267, gene@gmcculloughlaw.com

_____/s/_____
Juan Angel Guerra

Key:
RR:        Reporter's Record
CR:        Clerk's Records
Supp:      Supplement
App:       Appendix

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . iv, v, vi, vii, viii, ix, x, xi

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xv, xiv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . xvii

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii, xiii

**ISSUE NO. ONE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
Did the trial court err by granting special exceptions that gave no opportunity for Appellant to present his case pursuant to the Uniform Declaratory Judgments Act in that said statute allows matters of deeds (§37.004) (Texas Civil Practice and Remedies Code) and thereby the court abused its discretion by ignoring said statute and abused its discretion by dismissing Appellants' case in that the Appellants did not amend due to the fact that their cause of action may only be resolved through a declaratory judgment action and the court refused to hold a hearing once the Appellants obtained a copy of the special exceptions?

**ISSUE NO. TWO** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Did the Trial Court err by dismissing a plea in intervention in that the Court does not have the authority to dismiss a plea in intervention based on Rule 91a of the Texas Rules of Civil Procedure and the Court abused its discretion by refusing to grant leave to Late File Response to Motion to Dismiss?

**ISSUE NO. THREE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18,19
Did the Trial Court err by granting Appellees' Motion to Dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure in that Appellees did not fulfill the mandates of the Rule in that they failed to identify each cause of action it addressed, and the Rules require that movant must state specifically the reasons the cause of action has no basis in fact or in law in that it is an abuse of discretion to allow Appellees not to follow the requirements of a rule in that the court lacks jurisdiction for it not to follow established procedures for pleas in intervention and/or for Rule 91a of the Texas Rules of Civil Procedure?

**ISSUE NO FOUR.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Did the Trial Court err by an abuse of discretion in that the order signed on December 15, 2014 is not a final order due to the lack of finality in that not all relief requested was not addressed, it was a dismissal order however, it gave affirmative relief which causes reversible error and was not final and the court granted Appellees' relief not requested by the pleadings and then without any presentation of evidence, the court gave validity to ownership rights to one which only had "bare legal" title to a property in which another individual, the Appellant, has ownership? Therefore, the Court of Appeals should vacate the order of dismissal or remand the case with instructions.

**ISSUE NO FIVE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
Did the Trial Court abuse its discretion by not obligating Appellees to notify the Appellants of whatever motion was to be heard in that the Trial Court violated Appellants' personal and property rights by not informing Appellants what each hearing was to be about even after Appellants expressed their objections in writing and during the hearings?

**ISSUE NO. SIX.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Did the court err by not allowing evidence to be received and to be developed which would resolve the issue of law as to the law of gifts, deeds, and interspousal transfers of property and thereby did the court fail to apply the law on gifts and as a matter of law, the gift has failed and thereby the court of appeals should vacate order of dismissal in that it is an abuse of discretion not to follow and apply the law?

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

APPENDIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37,38

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

# INDEX OF AUTHORITIES

**CASES**                                                                        **PAGES**

*Alvarado v. Magic Valley Electric. Co-op, Inc.* 784 S. W. 2d 729, 733 (Tex. Civ. App.-San Antonio 1990, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*American Casualty & Life Insurance Co. v. Boyd* 394 S. W. 2d 685,688 (Tex. Civ. App. –Tyler 1965 no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*American Transfer & Storage Co. v. Reichley*, 543 S. W. 2d 162, 164 (Tex. Civ. App.-Amarillo 1976, writ ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

***BP America Production Co. v. Marshall*** (App. 4 Dist. 2008) 2008 WL 2828655, withdrawn and superseded on rehearing 288 S.W.3d 430, rehearing overruled, review granted, reversed 342 S.W.3d 59, petition for rehearing filed, rehearing denied (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Bahr v. Kohr*, 980 S. W. 2d 723, 727 (Tex. Civ. App.- San Antonio 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

***Bell v. State Department of Highways & Public Transportation***, 945 S.W.2d 292, 294 (Tex. Civ. App.-Houston [1st Dist.] 1997, writ denied). . . . . . . .11, 12

***Bonham State Bank v. Beadle***, 907 S.W.2d 465, 467 (Tex.1995) . . . . . . . . . . . . 11

***Bridewell v. Pritchett***, 562 S.W. 2d 956, 958 (Tex. Civ. App.-Fort Worth 1978, writ ref. n.r. e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

***Carter v. Carter,*** 736 S. W. 2d 775, 779 (Tex. Civ. App.-Houston [14th Dist.] 1987, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

***Carpenter v. Cimarron Hydrocarbons Corporation***, 98 S. W. 3d 682 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*City of Austin v. Castillo*, 25 S. W. 2d 67, 75 (Tex. Civ. App.-Corpus Christi 1997, writ denied.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Comet Aluminum Co. v. Dibrell*, 450 S. W. 2d 56, 58 (Tex. 1970) . . . . . . . . . . 23

*Crawford v. XTO Energy, Inc.* 455 S. W. 3d 245 (Tex. Civ. App.-Amarillo 2015) (pet. pending)................................................10

*Dawson v. Dawson*, 767 S. W. 3d 949, 951 (Tex. Civ. App.—Beaumont 1989, no writ)........................................32

*Dawson v. Tumlinson*, 150 Tex. 451, 242 S.W. 2d 191,192-193 (Tex. 1951)..................................................7

*De La Garza v. Express –News Corp*, 722 S. W. 3d 251, 253 (Tex. Civ. App.-San Antonio 1996, no writ.)....................26

*Devon Energy Production Co. v. K Resources, LLC.*, 450 S.W. 3d 203 (Tex. Civ. App.-Houston [14th Dist.] 2014) (pet. pending)....................10, 11

*Eggemeyer v. Eggemeyer*, 554 S. W. 2d 137, 140 (Tex. 1977)............28

*Energy Gulf States, Inc. v. Summers*, 282 S. W. 3d 433, 443 (Tex. 2009)..20

*Flores v. Flores*, 225 S.W. 3d 651 (Tex. Civ. App.-El Paso 2006) (writ den.). 6

*Flores v. Melo-Palacios*, 921 S. W. 2d 399, 404 (Tex. Civ. App.-Corpus Christi 1996, writ denied.)....................15

*Garcia v. Karam*, 154 Tex. 240, 276 S. W. 2d 255 ( Tex.1955)............7

*Garcia –Marroquin v. Nueves City Bail Bond Board*. I S. W. 3d 366, 379 n. 8 (Tex. Civ. App.—Corpus Christi 1999, no pet.)....................25,26

*Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 586-87 (Tex. Civ. App.—San Antonio 1998, pet. denied)....................15

*Guttman v. Khalsa*, 669 F. 3d 1101 (10th Cir. 2012)....................12

*Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990)....................14, 15, 16, 17, 18

*Harris County v. Sykes,* 136 S. W. 3d 635 (Tex. 2004)....................11

*Harrison v. Harrison*, 321 S. W. 3d 899, (Tex. Civ. App.—Houston [14th Dist.] 2010) (no writ hist.)....................8

*Hatton v. Burgess*, 167 S. W. 2d 260, 262-63 (Tex. Civ. App.-Beaumont 1942 writ red w.o. m.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hatfield v. Board Of County Commissioners for Converse County*, 52 F. 3d 856, 862 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Hawk v. E. K. Arledge, Inc.*, 107 S. W. 3d 79, 84 (Tex. Civ. App.—Eastland 2003) (pet. den.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hilley v. Hilley*, 342 S. W. 3d 565, 569 (Tex. 1961). . . . . . . . . . . . . . . . . . 31

*In the Interest of C.W., SV.R., and L.L.C.*, 65 S. W. 3d 353 (Tex. Civ. App.— Baumont 2001) (no writ hist.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Intermarque Automotive Products v. Feldman*, 21 S.W.3d 544, 548 n.7 (Tex. Civ. App.—Texarkana 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16, 17

*I-10 Colony, Inc. v. Chao Kuan Lee*, 393 S. W. 3d 467 (Tex. Civ. App.-Houston [14[th] Dist.] 2012) (pet. den.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

*In re Brilliant*, 86 S. W. 3d 680 (Tex. Civ. App.-El Paso, 2002)(no writ hist.). . .29

*In re Daredia*, 317 S.W.3d 247, 248 (Tex.2010). . . . . . . . . . . . . . . . . . . . . 25

*In re Does, I-10*, 242 S. W. 3d 805, (Tex. Civ. App.-Texarkana 2007)(no writ hist.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20, 29

*In re Knott*, 118 S. W. 3d 899 (Tex. Civ. App.--Texarkana 2003) (no writ hist.) 28

*In re Marriage of Moncey*, 404 S. W. 3d 701, 710 (Tex. Civ. App.-Texarkana 2013 no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Marriage of Murray*, 15 S. W. 3d 202, 205 (Tex. Civ. App.-Texarkana 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31, 33, 35

*In re M. N.*, 262 S. W. 3d 799, (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Union Carbide Corporation*, 273 S.W.3d 152, 156 (Tex.2008) . . . . . . . . . 15, 17

*John G. and Marie Stella Kennedy Memorial Foundation v. Dewhurst,* 90 S.W.3d 268, 289 (Tex.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jones v. Jones,* 804 S. W. 2d 623, 627 (Tex. Civ. App.—Texarkana 1991, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Jones v. Springs Ranch Co.,* 642 S. W. 3d 551, 553 (Tex. Civ. App.— Amarillo 1982, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Kennedy Con., Inc. v.* **Forman,** 316 S.W.3d 129, 135 (Tex. Civ. App.-Houston [14th Dist.] 2010, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11, 12

*Keim v. Anderson,* 943 S. W. 3d 938, 946 (Tex. Civ. App.-El Paso 1997, no writ. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Kimsey v. Kimsey,* 965 S. W. 2d 690, 694 (Tex. Civ. App.-El Paso 1998, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Law Offices of Windle Turley, P.C. v. Ghiasinejad,* 109 S.W.3d 68, 71 (Tex. Civ. App.—Fort Worth 2003, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Lehmann v. Har-Con Corp.* 39 S. W. 3d 191, 205 (Tex. 2001) . . . . . . . . . . . . . . . . . .25

*Liberty Mutual Insurance Company v. Adcock,* 412 S.W. 3d 492 (Tex. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*Longoria v. Lasater,* 292 S.W.3d 156, 165 (Tex. Civ. App.--San Antonio 2009, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Mangum v. Turner,* 255 S. W. 3d 223 (Tex. Civ. App.-Waco 2008) (pet. den.) . . . . . . .7

*Magness v. Magness,* 241 S. W. 3d 910, 912 (Tex. Civ. App.- Dallas 2007, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

*Martin v. Amerman,* 133 S. W. 3d 262 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Meekins v. Wisnoski,* 404 S. W. 3d 690 (Tex. Civ. App.-Houston [14th Dist.] 2013) ( no writ hist.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Metromedia Long Distance, Inc. v. Hughes*, 810 S. W. 3d 494, 499 (Tex. Civ. App.-San Antonio 1991, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Missouri Pacific Railroad v. Cross*, 501 S. W. 2d 868, 872 (Tex. 1973) . . . . . . . .19

*Molinst v. Kimbrell*, 356 S. W. 3d 107, 411 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . .20

*Mowbray v. Avery*, 76 S.W. 3d 663 (Tex. Civ. App.-Corpus Christi 2002) pet den.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Mueller v. Banks,* 302 S. W. 3d 447, 448 (Tex. Civ. App.-Eastland 1957, writ ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*National Loan Investors, L.P. v. Robinson*, 98 S. W. 3d 781 (Tex. Civ. App.-Amarillo, 2003) (pet. den.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Olympia Marble & Granite v. Mayes*, 17 S. W. 3d 437, 440 (Tex. Civ. App.-El Paso 1998 pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pandozy v. Shamis,* 254 S. W. 3d 596 (Tex. Civ. App.-Texarkana 2008) (MAND. Denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Pennsylvania Coal Co. v. Mahon*, 260 U. S. 293, 43 S. Ct. 158, 67 L Ed. 322, 28 A.L.R. 1321 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Platt v. Platt*, 991 S. W. 3d 481, 483 (Tex. Civ. App.-Tyler 1999)(no pet.). . . . . . . .29

*Porras v. Jefferson*, 409 S. W. 3d 804 Tex. Civ. App.—Houston [14th Dist.] 2013)(no writ hist.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..20, 29

*Potash Corporation of Saskatchewan, Inc. v. Mancias,* 942 S.W.2d 61, 64 (Tex. Civ. App.—Corpus Christi 1997, orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reaves v. Reaves*, No. 11-11-00026-C. (Tex. Civ. App.—Eastland 2012, )(memo op. 8-31-12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31 (App. V)

*Riley v. Brown*, 452 S. W. 2d 548, 551 (Tex. Civ. App.-Tyler 1970)( no writ). . . . . 32

*Roach v Roach*, 672 S. W. 2d 524, 5130-31 (Tex. Civ. App. –Amarillo 1984, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Roosth v. Roosth*, 889 S. W. 3d 445, 457 (Tex. Civ. App.—Houston [14th Dist.] 1994, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

*Saldana v. Saldana,* 791 S.W.2d 316, 320 (Tex. Civ. App.—Corpus Christi 1990)( no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Spillman v. Spillman,* 757 S. W. 2d 166 (Tex. Civ. App.-San Antonio 1988)(writ dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Stewart v. USA Custom Paint &Body Shop*, 870 S. W. 2d 18, 20 (Tex. 1994) . . . . .24

*Soto v. Sea-Road International,* 942 S. W. 2d 67, 78 (Tex. Civ. App.-Corpus Christi 1997; writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

*Southwestern Bell Telephone Company v. Public Utility Commission*, 622 S. W. 2d 82 (Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17, 18

*Transport Insurance Company v. Faircloth*, 898 S. W. 2d 269, 275 (Tex. 1995) . . 28

*Texas Association of Business v. Texas Air Control Board,* 852 S. W. 2d 440 (Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

*Thompson v. Dart,* 746 S.W. 2d 821, 825 (Tex. Civ. App- San Antonio 1988,)(no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*University of Texas M.D. Anderson Cancer Center v. King,* 417 S.W. 3d 1 (Tex. Civ. App.-Houston [14th Dist.] 2013)(no writ hist.). . . . . . . . . . . . . . . . . . . . . . 29

*Ward v. Ladner,* 322 S.W. 3d 692 (Tex. Civ. App.—Tyler 2010) (no writ hist.). . 6

*Wells v. Wells,* 251 S. W. 3d 834, 839 (Tex. Civ. App.-Dallas 2007)( pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Wierzchula v. Wierzchula,* 623 S.W. 3d 730, 732 (Tex. Civ. App.-Houston [1st Dist.] 1981)( no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

# CONSTITUTION

U.S. Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Amendments IV, V, and XIV . . . . .28

Texas Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Art. I § 13 . . . . . . . . . . . . . . . . . . 1, 28

Art. 1 § 16 . . . . . . . . . . . . . . . . . . . .28

Art. 1 § 19 . . . . . . . . . . . . . . . . . . . .28

Art. 5 § 7 . . . . . . . . . . . . . . . . . .20, 29

Art. 16 § 15 . . . . . . . . . . . . . . . . . .31

# STATUTES

Texas Business and Commerce Code      Chapter 16 . . . . . . . . . . . . . . 10

Chapter 26 . . . . . . . . . . . . .6,10

26.01(a),(b) (4) . . . . . . . . . . . .6

Texas Civil Practice and Remedies Code      Chapter 37 . . . . . . . ..xv, 4, 8, 34
§37.004 . . . . . . . . . . .ii,xii, 4, 8
§37.004(a) . . . . . . . . . . . . . . 11
§37.008 . . . . . . . . . . . . . . . . .11

Texas Family Code      . . . . . . . . . . . . . . .. . . . . . . . 10, 14
§3.001(2) . . . . . . . . . . . . . . 31

Texas Estates Code      . . . . . . . . . . . . . . . . . . . . . . . .10

Texas Government Code      §22.004(c) . . . . . . . . . . . 19, 20
§24.030(a) . . . . . . . . . . . 20, 29

Texas Property Code      Chapter 22 . . . . . . . . . . . . . 8, 9
§22.001 . . . . . . . . . . . . . . .9, 10

Uniform Declaratory Judgments Act      Chapter 37 . . . . . . xii, 4, 11, 34

## RULES

Texas Rules of Appellate Procedure      Rule 44 . . . . . . . . . . . . . . . . 33
Texas Rules of Civil Procedure        Rule 60 . . . . . . . . . . . 14,15, 17
                                       Rule 90 . . . . . . . . . . . . . . . . . .5

                                       Rule 91a . . . . . . ii, xii, xvi, 13, 15, 16, 17, 18, 19, 20, 21,22
                                       Rule 166a(c) . . . . . . . . . . . 29.
                                       Rule 301 . . . . . . . . . . . . . . .24

Texas Rules of Judicial Administration    Rule 6 . . . . . . . . . . . . . . . . .27

Treatises/Encyclopedias/Dictionaries

               28A.L.R.1321 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
               16 AM JUR 2D Constitutional Law §362 (1964) . . . . .28
               Black's Law Dictionary 5th Edition, 1979 . . . . . . . . . . 30

# ISSUES PRESENTED

**ISSUE NO. ONE**
Did the trial court err by granting special exceptions that gave no opportunity for Appellant to present his case pursuant to the Uniform Declaratory Judgments Act in that said statute allows matters of deeds (§37.004) (Texas Civil Practice and Remedies Code) and thereby the court abused its discretion by ignoring said statute and abused its discretion by dismissing Appellants' case in that the Appellants did not amend due to the fact their cause of action may only be resolved through a declaratory judgment action and the court refused to hold a hearing once the Appellants obtained a copy of the special exceptions?

**ISSUE NO. TWO**
Did the Trial Court err by dismissing a plea in intervention in that the Court does not have the authority to dismiss a plea in intervention based on Rule 91a of the Texas Rules of Civil Procedure and the Court abused its discretion by refusing to grant leave to Late File Response to Motion to Dismiss?

**ISSUE NO. THREE**
Did the Trial Court err by granting Appellees' Motion to Dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure in that Appellees did not fulfill the mandates of the Rule in that they failed to identify each cause of action it addressed, and the Rule requires that movant must state specifically the reasons the cause of action has no basis in fact or in law and it is an abuse of discretion to allow Appellees not to follow the requirements of a rule in that the court lacks jurisdiction to allow Appellees not to follow established procedures for pleas in intervention and/or for Rule 91a of the Texas Rules of Civil Procedure?

**ISSUE NO FOUR**
Did the Trial Court err by an abuse of discretion in that the order signed on December 15, 2014 is not a final order due to the lack of finality in that not all relief requested was not addressed, it was a dismissal order however, it gave affirmative relief which causes reversible error and was not final and the court granted Appellees' relief not requested by the pleadings and then without any presentation of evidence, the court gave validity to ownership rights to one which only had "bare legal" title to a property in which another individual, the Appellant, has ownership rights?

Therefore, the Court of Appeals should vacate the order of dismissal or remand the case with instructions.

**ISSUE NO FIVE**
Did the Trial Court abuse its discretion by not obligating Appellees to notify the Appellants of whatever motion was to be heard in that the Trial Court violated Appellants' personal and property rights by not informing Appellants what each hearing was to be about even after Appellants expressed their objections in writing and during the hearings?

**ISSUE NO. SIX**
Did the trial court err by not allowing evidence to be received and to be developed which would resolve the issue of law as to the law of gifts, deeds, and interspousal transfers of property and thereby the court failed to apply the law on gifts and as a matter of law, the gift has failed and thereby the court of appeals should vacate order of dismissal in that it is an abuse of discretion not to apply the law?

CAUSE NO 13-15-00038-CV
IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI/EDINBURG

ANTONIO ARRIAGA AND INEZ LARA ROSALES, APPELLANTS
VS.
OBDULIA MARTINEZ ARRIAGA, ANTONIO MARTINEZ ARRIAGA, JR.,
AND REYNA LUISA MARTINEZ ARRIAGA, APPELLEES

On Appeal from the 197TH DISTRICT COURT
WILLACY COUNTY, TEXAS
Trial Court Cause No. 2014-CV-0100-A

APPELLANTS' BRIEF

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

**NOW COME**, ANTONIO ARRIAGA AND INEZ ROSALES, Appellants herein, and file this their Appellants' Brief in the above styled and numbered cause and hereby present in their Appellants' Brief that they complain of a district court's order of dismissal. Said court did not grant the relief that was necessary and did not decide on the case and controversy presented to said court.

Therefore, Appellants humbly present their Brief in their appeal to this court.

## STATEMENT OF THE CASE

Appellant, Antonio Arriaga, filed his lawsuit by invoking Chapter 37 of the Texas Civil Practice and Remedies Code, i.e. the Uniform Declaratory Judgments Act. After the divorce from his first wife, he opted to place the properties he had bought during the second marriage under his children's names. This was done with the second wife's consent with the understanding she still owned her half.

By filing the lawsuit, Appellant was attempting to put his house in order due to his age. However, the court did not allow Appellant to have an opportunity to defend himself much less present his case. The Court made its rulings without the Appellants having been given the opportunity to know what the hearings were to be about, the court granted special exceptions for the alleged use of the wrong statute, ignoring the other statute which applied more appropriately and dismissed an intervention by deciding it on the merits with no opportunity being given to the Intervenor as prescribed by law and never made allowances for the lack of notice of all the motion and hearings that were held, the court knowing that the Appellant had not received any documentation that was being presented to the Court. The court stated in its findings in the Findings of Fact and Conclusions of Law, No.3, (CR. supp.) that Appellant did not amend his pleadings after the court granted the special exceptions.

The trial court based its Order of Dismissal on (1) the alleged Appellant's failure to cooperate with receiver; then (2) dismissed a Plea in Intervention on the merits; (3) alleged failure to amend after the special exceptions were granted; (4) ordered Appellants not to collect rents and because (5) Appellants never provided certified copies of divorce decree or gift deed, and dismissed the case filed by

xv.

Intervenor due to Appellees' use of Rule 91a. On the "merits" side of the order, the court ordered that Defendants, Appellees herein, were free to dispose of any of the properties identified in the order. And the Plea in Intervention was dismissed on the merits. (CR. v. 1 p. 137) That is the "Order of Dismissal."

# STATEMENT REGARDING ORAL ARGUMENT

Appellants humbly request that this court grant oral arguments. The Court should grant oral argument for the following reasons:

The issues presented have not been conclusively decided. The crux of the case is that one statute is being challenged with another statute, each of equal dignity.

Unfortunately, the trial court did not allow for the Appellants to develop their case; therefore, the facts are obscured by trial tactics that were allowed and which did not address the facts to be determined.

Oral argument would give the Court a more complete understanding of the facts presented in this appeal.

Oral argument would also allow the Court to better analyze the complicated legal issues presented in this appeal.

The result of the oral argument would be that it would significantly aid the Court in deciding this case.

## STATEMENT OF THE FACTS

During the marriage between the Appellants, they were able to accumulate quite a number of properties. On or about 1990, Appellants discussed the future of themselves and the children of the previous marriage, now the Appellees to this lawsuit. In attempt to safeguard the property, Appellants opted to place the properties in the names of said issue. This occurred and yet, the new wife helped pay for the property that would be labeled separate property. (RR. v. 2 p. 14 1 12) (p.15 1. 7)

All of a sudden, a prodigal son evolved into a "quick –cash" seller. At all times since 1990, Appellant, as owner of the properties, had been the administrator for the properties and for the income, with total dominion and control. All of sudden, Appellants were ousted from their property and Appellants filed this lawsuit to have the property safeguarded as was originally intended. The prodigal son is leading a riotous life and is now doing drugs.

What Appellees have is "bare legal" title. Appellees argue that once a document is signed, it cannot be changed. (RR. v 2 p. 9 1. 12) That is not the law nor the truth. They have no proof of equitable title in that there is none. They did not pay any valuable consideration for any of the properties. Appellants believed that this was the manner to organize their estate; however, they have not been allowed the right to present their case to a court pursuant to the "Open-Courts" Doctrine. (Constitution of the State of Texas, Art. I § 13.)

Appellant Arriaga apparently made himself understood in that even the opposing counsel stated to the Court (RR v. 2 p. 10 1. 8-16) the following:

1

"[T]hen also, notwithstanding any argument that Mr. Arriaga may make about the fact that his current wife may have an interest to this property, he has conceded before this Court – now he wasn't under oath, but I believe that he did intend to tell the Court the truth, that he intended to deliver half of the property, at least a half interest, or he acknowledges delivering at least a half interest to the property to his three children who are here today as defendants.

THE COURT: Yes, he says that."

He has intended to deliver but he has not delivered. He has dominion and control.

The following is the list of the six (6) times Appellant informed the court he had not received any documents that were being discussed at the four (4) hearings:

(1) RR v. 2 p. 19 l 24 p.20 l. 1-2

(2) CR v. 1 p. 37 through document

(3) CR v. 1 p. 63 through document

(4) CR v. 1 p. 78 through document

(5) RR. v. 3 p. 8 l. 13-15

(6) CR v. 1. p. 104 through document

For a total of six (6) times, Appellant requested that he be given notice of what was to happen on the day of the hearing.

The chronological sequence of events pertaining to the special exceptions is as follows:

1. 3 April, 2014 - Appellees, Defendants below, filed their special exceptions. (Please note Appellants never received any notice or a copy.)

2. 8 May, 2014 - There was a hearing on April 23 and the special exceptions were granted. The order was signed on 8th of May 2014 (CR. v. 1 p. 33)

2

3. 9 May 2014 – Appellants, Plaintiffs below, filed Plaintiffs' Objections to Defendants' proposed order sustaining special exceptions. (The court was verbally informed at the hearing on April 23, 2014 and in writing. (CR v. 1 p. 37)

4. 24 June 2014 – Through Plaintiffs' Response to Defendants' Motion for Contempt, Appellants informed court again of no notice.

5. 9 September 2014 – Through Plaintiffs' objections, inter alia, Defendants' special exceptions, Appellants informed the court of no notice.

6. 20 November, 2014 – Through Plaintiffs' Response to Defendants' Motion to Dismiss action with prejudice for failure to comply with court order and termination of Receivership.

Again, Appellants informed the court and the opposing party of no notification.

It is ironic to know that the court had become aware of the lack of notice of the special exceptions. Since Appellants' motion filed on the 9th of May, 2014 (CR v. 1. p. 37 and 38), Appellants had asked for a new hearing on the special exceptions once they had been received by Appellants, the court denied that request on the 15th of December, 2014. (CR. v. 1 p. 138)

He wanted to participate as guaranteed by the Constitution of Texas and of United States.

**SUMMARY OF ARGUMENT**

The basis of this appeal is founded on two (2) of the cardinal principles of the rights granted and guaranteed by the state's and the federal constitutions. First

and foremost, is the notice requirements of due process. This would include the right one has to seek redress through the court system, this means a meaningful hearing. The other is a jurisdictional issue.

On a matter of plea in intervention, the court cannot dismiss without a hearing. It may only strike the intervention. Also, the Court cannot ignore a statute which allows him to seek a court to declare his rights pursuant to a deed. (Chapter 37 of the Texas Civil Practice and Remedies Code)

Therefore, the only viable conclusion is that the trial court erred and the case must be remanded or to merely vacate the order.

On matters of special exceptions and dismissal for such, the recipients of a negative ruling, Appellants herein, have a choice of either amending or appealing the decision. *Mowbray v. Avery*, 765 S. W. 3d 663, 677 (Tex. Civ. App.-Corpus Christi 2002)(pet. den.). Hence, this appeal.

## ISSUE NO. ONE

Did the trial court err by granting special exceptions that gave no opportunity for Appellant to present his case pursuant to the Uniform Declaratory Judgments Act in that said statute allows matters of deeds (§37.004) (Texas Civil Practice and Remedies Code) and thereby the court abused its discretion by ignoring said statute and abused its discretion by dismissing Appellants' case in that Appellants did not amend due his cause of action may only be resolved through a declaratory judgment action and the court refused to hold a hearing once the Appellants obtained a copy of the special exceptions?

## FACTS PERTAINING TO THIS ISSUE

Appellants are attempting to organize their property, both real and personal, in that Appellant Antonio Arriaga desires to leave a well-organized estate in that he

is already up in age. (77 years) He then is gathering everything he and his wife of over thirty (30) years, have accumulated. His son turned out to be a "prodigal" son and desires his share of his inheritance.

For convenience sake, Appellants had opted to place all the properties under the children's names and they in turn, when the time would come, they would look after their aging father and their step-mother and his issue would be the owners without any probate requirements.

Unfortunately, Appellee "prodigal" son, after more than twenty-eight (28) years, decided that he wants to obtain his inheritance and wants it now. He has cut off Appellants and the sisters, Appellees.

One needs to review the facts in the petition (RR v. 1 p.7) and the First Supplement Original Petition for Declaratory Judgment (CR. v. 1 p. 18) in that Appellees had received these two (2) documents before their answer was filed. The Plaintiff has a choice, to either amend or stand by the pleading. (*Mowbray v. Avery*, 76 S. W. 3d 663 (Tex. Civ. App.-Corpus Christi 2002) (pet. den.)

What Appellees are attempting to do is to say that Appellants state no cause of action. This is improper. (*Spillman v. Spillman*, 757 S. W. 2d 166 (Tex. Civ. App.-San Antonio 1988 writ dism'd) The Appellees have attempted to use a general demurrer and that is not allowed by the rules. (Rule 90 of the Texas Rules of Civil Procedure.) The Appellees desire an explanation as to why a declaratory judgment act lawsuit. (CR. v. 1 p. 25)

## ARGUMENT AND AUTHORITIES

One may wonder if deeds and the transference of real property may be accomplished through a combination of oral and written conveyances. One must

5

keep in mind that this is a family affair.

Appellees rely heavily on *Martin v. Amerman*, 133 S. W. 3d 262 (Tex. 2004). Said case is for solving problems of boundary disputes. The case at bar is a family's future, how the property is to be divided and they need judicial intervention in order to rectify the incorrectly written documents: not a boundary dispute, as said case speaks about.

However, there are many examples which remove the transaction from the Statute of Frauds. (Chapter 26, Texas Business and Commerce Code)

Appellant Antonio Arriaga, the father, administered the properties and distributed the profits according to how he saw just, i.e, total dominion and control.

The important item of the procedure to determine the outcome of the case is through a trial by jury. The court in *Ward v. Ladner*, 322 S. W. 3d 692 (Tex. Civ. App.—Tyler 2010) (no writ hist.) stated: "Whether an oral contract existed is a question of fact for the jury. *American Transfer & Storage Co. v. Reichley*, 543 S. W. 2d 162,164 (Tex. Civ. App.-Amarillo 1976, writ ref'd) Because price is an essential element of a real estate contract, Ladner was required to secure a finding on the contract price to be entitled to specific performance." In the case at bar, it is the reverse of what would be an oral transference. It is a case of a father placing his life-long obtained properties in his children's names. And he is reserving certain rights which he now trying to prove basically by not delivering the property and giving up the dominion and control.

The case in *Flores v. Flores*, 225 S. W. 3d 651 (Tex. Civ. App.-El Paso 2006)(writ den.) the court stated, "Generally, the statute of frauds prohibits enforcement of an oral conveyance of real property. TEX. BUS. & COM CODE ANN. 26.01(a), (b) (4) (Vernon Supp. 2006) To relieve a parol gift of real estate

6

from the statute of frauds, one must show three elements; (1) a gift in praesenti that is , a present gift; (2) possession under the gift by the donee with the donor's consent; and (3) permanent and valuable improvements, the existence of such facts as would make it a fraud upon the donee not to enforce the gift. *Thompson v. Dart*, 746 S. W. 2d 821,825 (Tex. Civ. App.--San Antonio 1988, no writ); *Dawson v. Tumlinson*, 150 Tex. 451, 242, S. W. 2d 191,192-193 (Tex. 1951).

The request for relief from Appellants was that the court would see the gift deed to the issue yet the lack of two elements; the delivery and the acceptance. This same court stated "To be a gift in praesenti, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Thompson*, 746 S.W.2d at 825. Three elements are necessary to establish the existence of a gift: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* Further, the owner must release all dominion and control over the property. *Id.* "

What elements are obviously missing? They are (1) the delivery of the property in that Appellants kept the properties and (2) the acceptance of the property in that it never legally occurred.

There are many exceptions to the Statute of Frauds. In the case of *Mangum v. Turner*, 255 S. W. 3d 223 (Tex. Civ. App.-Waco 2008)(pet. den.) the court stated, "Nor is the statute of frauds applicable because a real estate transaction is merely incidentally involved. *Bridewell v. Pritchett*, 562 S.W.2d 956, 958 (Tex.Civ.App.-Fort Worth 1978, writ ref' d n.r.e.) (citing **Garcia v. Karam**, 154 Tex. 240, 276 S.W2d 255 (1955)). Because we find the statute of frauds inapplicable to the oral settlement agreement, we overrule Mangum's first and fifth issues."

And, what about between spouses. This is also an exception to the rule. The

7

husband may run his administration of business as he sees fit. The Court in *Harrison v. Harrison*, 321 S.W. 3d 899, (Tex. Civ. App.-Houston [14[th] Dist.] 2010)( no writ hist.) pointed out that the trial court's findings that husband conveyed one-half of a certain piece of real property to wife did not violate the statute of frauds, even thought there was no written document conveying the property from husband to wife.

There is no greater evidence that one would need to share that Appellant father had no intent of delivering the property to his issue in that he had not given up his administration for over 25 years and they had not seen a "dime out of these properties" (RR. v. 2 p.10. L 22)

Now that the Statute of Frauds exceptions have been explained, the issue is what law to apply. There are two (2) statutes which mention deeds. One is the Texas Property Code, Chapter 22, and the other the Texas Civil Practice and Remedies Code, Chapter 37, which mentions the declaration of rights on a property where there is a deed involved. No law states it is the exclusive method.

The issue here is whether this fact scenario should be presented through the utilization of the Trespass to Try Title law or through the Declaratory Judgments Act. The following are the statutes:

## CPRC §37.004. SUBJECT MATTER OF RELIEF

"(a) A person interested under a deed, will, written contract, or other writings constituting a contract of whose rights, statues, or other real relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration or rights, status, or other legal relations thereunder.

8

(b) A contract may be construed either before or after there has been a breach."

**Property Code §22.001. Trespass to Try Title.**

" (a) A trespass to try title action is the method of determining title to lands, tenements, or other real property.

(b) The action of ejectment is not available in this state."

The standard for applying the laws have been dictated by the Texas Supreme Court in the case of *Liberty Mutual Insurance Company v. Adcock*, 412 S.W. 3d 492 (Tex. 2013) The Court in its dicta pinpointed certain key points for the courts to follow.

"It said that a fundamental constraint on the courts' rule in statutory interpretation is that the Legislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere."

The point to remember is that what the legislature left out is just as important as to what is put in it. The court exhorted that when the Legislature expresses its intent regarding a subject in one setting, but remains silent on the subject in another, the court will generally abide by the rule that such silence is intentional.

One may note that the Property Code, Chapter 22, states "the method" but not the "exclusive method" nor does it uses the terms "must". The problem is that there is no clear-cut explanation for this dilemma.

The Court in *I-10 Colony, Inc. v. Chad Kuan Lee*, 393 S. W. 3d 467 (Tex. Civ. App.-Houston [14th Dist.] 2012)(pet. den.) stated, "The line segregating claims impacting title to property that *can* be brought as declaratory judgment

9

actions from those claims impacting title that *must* be brought as trespass-to-try-title actions is not a clear one under current Texas law. The uncertainty originates with two legislative directives that appear to overlap to some degree."

Another court has ruled that when a suit does not involve the construction or validity of deeds or other documents of title, the suit is not one for declaratory judgment. ***BP America Production Co. v. Marshall*** (App. 4 Dist. 2008) 2008 WL 2828655, withdrawn and superseded on rehearing 288 S.W.3d 430, rehearing overruled, review granted, reversed 342 S.W.3d 59 (Tex.) petition for rehearing filed, rehearing denied.

In the case at bar, one may see the Texas Family Code being involved; the Texas Estates Code as to who is to be the heirs, the possibility of adverse possession; (Chapter 16 of Civil Practice and Remedies Code.) however, the ones which paid for the properties were the Appellants.

To recover with the Trespass to Try Title law, the court in ***Meekins v. Wisnoski***, 404 S. W. 3d 690 (Tex. Civ. App.-Houston [14th Dist.] 2013)(no writ hist.) stated the following: "To recover, a claimant must establish a prima facie right of title by proving one of the following: (1) a regular chain of conveyances from the sovereign; (2) a superior title out of a common source; (3) title by limitations; or (4) prior possession, which has not been abandoned. ***Kennedy Con., Inc. v. Forman***, 316 S.W.3d 129, 135 (Tex. Civ. App.-Houston [14th Dist.] 2010, no pet.)." None of these elements are viable nor applicable to the case at bar.

First of all, all parties necessary must be brought into the controversy. This can only be done with a declaratory judgment. ***Crawford v. XTO Energy, Inc.*** 455 S. W. 3d 245 (Tex. Civ. App.-Amarillo 2015) (pet. pending) The Court in ***Devon***

10

***Energy Production Co. v. RCS Res.*** 450 S.W. 3d 203 (Tex. Civ. App.-Houston [14th Dist.] 2014) (pet. pending) stated, "The Uniform Declaratory Judgments Act (UDJA) allows a person interested under a written contract to have determined any question of construction or validity arising under the contract and to "obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). But the Act does not create or enlarge a trial court's subject matter jurisdiction; it is "merely a procedural device for deciding cases already within a court's jurisdiction." ***Texas Association of Business v. Texas Air Control Board,*** 852 S.W.2d at 444 (Tex. 1993) Thus, a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy. ***Bonham State Bank v. Beadle,*** 907 S.W.2d 465, 467 (Tex.1995); Tex. Civ. Prac. & Rem. Code §37.008 .

Title to land is exclusive to the district court which is a court of general jurisdiction. The Declaratory Judgments Act is the only procedure which would resolve the problem between the parties. However, what if there is a mistake as to the labeling of a procedure as the correct one, but it is not the correct one, the substantive rights prevail. Again, the court in ***I-10 Colony, Inc. v. Chao Kuan Lee.*** 393 S. W. 3d 467 (Tex. Civ. App. –Houston [14th Dist.] 2012) (pet. den.) stated, "Texas courts consider the substance and not the form of the pleadings to determine whether an action is properly considered as a trespass or declaratory judgment action. ***Longoria v. Lasater,*** 292 S.W.3d 156, 165 (Tex. Civ. App.-San Antonio 2009, pet. denied); **Hawk *v. E.K. Arledge, Inc.,*** 107 S.W.3d 79, 84 (Tex. Civ. App.-Eastland 2003, pet. denied); ***Bell v. State Dept. of Highways & Public Transp.,*** 945 S.W.2d 292, 294 (Tex. Civ. App.-Houston [1st Dist.] 1997, writ denied), ***abrogated on other grounds by Harris County v. Sykes,*** 136 S.W.3d 635 (Tex.2004); ***Kennedy Con., Inc. v. Forman,*** 316 S.W.3d 129, (Tex. Civ. App.- Houston [14th

11

Dist.] no pet.)    "Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of whether legal or equitable relief is sought." Thus, the fact that Lee had nonsuited his trespass-to-try-title action does not mean that he waived his claim to ownership of the property where he sought essentially the same relief in his declaratory judgment action. We simply interpret the declaratory judgment request as a trespass-to-try-title action. *Longoria*, 292 S.W.3d at 165; *Hawk*, 107 S.W.3d at 84; *Bell*, 945 S.W.2d at 294. Moreover, the mere fact that the trial court referred to its pronouncements regarding title as "declarations" does not mean that the trial court erred. *Cf. John and Marie Stella Kenedy Memorial v. Dewhurst*, 90 S.W.3d 268, 289 (Tex.2002).   Finding no error where declaratory relief was merely incidental to issues of title." One may conclude, equity surpasses procedure.

The bottom line is cogently stated in the case of *Guttman v. Khalsa*, 669 F. 3d 1101 (10th Cir. 2012) in which the court stated, " To assess whether an individual was denied procedural due process, courts must engage in a two (2) step inquiry: (1) did the individual possess a protected interest such that the due process protection was applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Hatfield v. Board Of County Commissioners*, 52 F. 3d 858, 862 (10th Cir. 1995)

If the purpose of the courts is to do justice, this court of appeals is requested to grant this issue and remand the case to the trial court for proper adjudication in congruence with the order of this court or  vacate the order of dismissal.

There is no need for special exceptions.  Here is the outline of the pleadings

12

original petition and supplement:

1. "Judge, we bought these properties." ( and a list followed)

2. "We gave them by "gift deed." (a sample is given) (Everyone knows the copies are all available in the County Clerk's Records.)

3. "We were married at the time we acquired them."

4. "We have never delivered the gift."

5. "The children sold two (2) properties."

6. "We need an accounting and the money back."

7. "Judge, our prayer is we want what we lost; declare it is 50% we want to give the children or place all in a constructive trust."
   (nowhere was delivery of the res mentioned.)

Why should anyone need an explanation as to what the pleadings are about? Therefore, this court should overturn the dismissal order and by vacate the order or, in the alternative, remand the case for trial or reverse and render a decision.

## ISSUE NO. TWO

Did the Trial Court err by dismissing a plea in intervention in that the Court does not have the authority to dismiss a plea in intervention based on Rule 91a of the Texas Rules of Civil Procedure and the Court abused its discretion by refusing to grant leave to Late File Response to Motion to Dismiss?

## FACTS PERTAINING TO THIS ISSUE

Appellant Inez Lara Rosales, wife to Appellant Antonio Arriaga, filed her Plea in Intervention on September 19, 2014. (CR v. 1 p. 88) There was a motion to Dismiss Plea in Intervention filed on October 30, 2014. (CR v. 1 p. 99) On November 24, 2014, Appellant Rosales filed her Intervenor's Response to Defendants' Motion to Dismiss Plea in Intervention. (CR. v. 1 p. 117) together with the response, Appellant Rosales filed an Intervenor's Motion for Leave to Late File Response to Motion to Dismiss Plea in Intervention, and an affidavit in

13

support of Intervenor's Motion. (CR. v. 1 p. 113)

Then, without a hearing having been held, the court granted the motion to dismiss the plea of intervention. (RR v. 6 p. 20 l. 12-14) No motion to strike was ever filed. (Rule 60, Texas Rules of Civil Procedure) (*Guaranty Federal Savings Bank v. Horseshoe Operating Co.* 793 S. W. 2d 652 (Tex. 1990))

The alleged "final order" was an order of dismissal signed on December 15, 2014. (CR. V. 1 p. 135)

The order denying motion for leave to late file the response and plea in intervention, was signed also on December 15, 2014. (CR. v. 1 pp138-139).

## ARGUMENT AND AUTHORITIES

Appellant Rosales was the intervenor and she invoked Rule 60 of the Texas Rules of Civil Procedure. As spouse of Appellant Antonio Arriaga, she is entitled to fifty (50%) percent of all property bought during the marriage. All of the property involved in the case was purchased during Appellants' marriage. That is basic Family Code as to community property.

According to Appellee, Antonio Arriaga, Jr., Appellants have been married for twenty-eight (28) years. (RR v. 6 y p. 19 l. 13) According to the documents, the properties were bought after 1990. (CR. v. 1 p. 07) Appellants were married in 1988. (RR v. 6 p. 15 l. 20-22) Therefore, to begin with, if the court had had a doubt, the court should have held an evidentiary hearing. But, it did not.

By the Appellee's own statements, Appellant Rosales had standing to be a party by being Appellant's Antonio Arriaga's wife at the time of the purchase of the properties. (RR. v 6 p 19 l. 10-16). The motion to dismiss the intervention was set; however, not for her defense. It would be her burden to show she has standing to bring her Plea in Intervention. However, she was dismissed together with the

14

case in chief with no opportunity to show standing.

Rule 60 of the Texas Rules of Civil Procedure simply states that the court should have "sufficient cause" to strike, not to dismiss. "To dismiss" is for the adjudication on the merits. To strike is so that Intervernor may refile.

If any party in the suit opposes the intervention, that party must challenge it by filing a motion to strike the petition in intervention. TRCP 60; *In re Union Carbide Corp.*, 273 S.W.3d 152, 154-55 (Tex. 2008); *Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex.1990). A court cannot strike an intervention on its own initiative. *Guaranty Fed.*, 793 S.W.2d at 657; *Flores v. Melo-Palacios*, 921 S.W.2d 399, 404 (Tex. Civ. App.—Corpus Christi 1996, writ denied). *Ghidoni v. Stone Oak, Inc.*, 966 S.W.2d 573, 586-87 (Tex. Civ. App.—San Antonio 1998, pet. denied) (motions such as motions to abate or sever are not substitutes for motion to strike). What the motion to strike should allege is different what a Rule 91a must allege in their motion. Therefore, Rule 91a of the Texas Rules of Civil Procedure should not be a substitute for a motion to strike. A motion to strike should allege the following:

1. The intervenor does not have a justiciable interest in the suit—that is, the intervenor (1) could not have brought all or part of the same suit in its own name or (2) would not have been able to defeat all or part of the recovery if the suit had been filed against it. *Guaranty Fed.*, 793 S.W.2d at 657; *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. Civ. App.—Fort Worth 2003, no pet.).

2. The intervention will complicate the case by an excessive multiplication of the issues. *Guaranty Fed.*, 793 S.W.2d at 657; *Ghiasinejad*, 109 S.W.3d at 70.

3. The intervention is not essential to protect the intervenor's interest.

15

*Guaranty Fed.,* 793 S.W.2d at 657; *Ghiasinejad,* 109 S.W.3d at 70.

She had filed several days before the hearing yet the court did not allow leave to file the response. Some courts even take evidence. This court denied Intervenor the right to response.

Appellant knows she is a lawful and wedded spouse; therefore, she owns one-half. She should have a say-so as owner.

The Court does not dictate what may be filed. It only rules on what is filed. The Court should not <u>sua</u> <u>sponte</u> order a party to bring to the court copies of documents. (RR. v. 2 p. 16 l. 20-25)

The Intervenor should be given the opportunity to present her position, not as a defense of Appellee's motion to dismiss. This is especially true when Appellees' Motion to Dismiss (Rule 91a) has no facts stating its basis.

At the hearing, the burden is on the intervenor to show it has a justiciable interest in the lawsuit. *Intermarque Automotive Products v. Feldman,* 21 S.W.3d 544, 549 (Tex. Civ. App.—Texarkana 2000, no pet.). The intervenor should be given the opportunity to respond to the motion, but the issue of whether it has a justiciable interest may be resolved by reference to the petition in intervention. *Potash Corporation of Saskatchewen, Inc. v. Mancias,* 942 S.W.2d 61, 64 (Tex. Civ. App.—Corpus Christi 1997, orig. proceeding). To establish the right to intervene as a plaintiff, the intervenor must show that it could have brought all or part of the same action in its own name; to establish the right to intervene as a defendant, the intervenor must show it would be able to defeat all or part of the suit if the suit had been brought against it. *Guaranty Fed. Say. Bank v. Horseshoe Oper. Co.,* 793 S.W.2d 652, 657 (Tex.1990); *Feldman,* 21 S.W.3d at 549.

As far as the order is concerned, the trial court has broad discretion to rule on the motion to strike the petition in intervention. *Guaranty Fed. Say. Bank v. Horseshoe Oper. Co.,* 793 S.W.2d 652, 657 (Tex.1990). The trial court may strike a petition in intervention if (1) the intervenor does not meet the test for intervention (2) the intervention will complicate the case by an excessive multiplication of the issues, or (3) the intervention is not essential to protect the intervenor's interest. *Guaranty Fed.,* 793 S.W.2d at 657; *Law Offices of Windle Turley, P.C. v. Ghiasinejad,* 109 S.W.3d 68, 71 (Tex. Civ. App.—Fort Worth 2003, no pet.) (Intervention was struck because it would have injected new issues into already complicated case). To determine whether an intervention is appropriate, the trial court can consider the allegations of fact in both the plea in intervention and the motion to strike. *Intermarque Auto. Prods. v. Feldman,* 21 S.W.3d 544, 548 n.7 (Tex. Civ. App.—Texarkana 2000, no pet.).

The court must rule on the motion to strike before considering other matters. *In re Union Carbide Corp.,* 273 S.W.3d 152, 156 (Tex.2008) Court must rule on motion to strike before considering severance.

From what the rules state on dismissal (Rule 91a) and intervention (Rule 60), there is no correlation between the two. They are mutually exclusive. The dismissal order does not allow dismissal of intervention. This type of errors by the trial court results in a quagmire that it is impossible to determine how to present the problem to the court of appeals that is normal in that an order granting or denying permission to intervene is a nonappealable interlocutory order. *Mueller v. Banks,* 302 S. W. 2d 447, 448 (Tex. Civ. App.-Eastland 1957, writ ref'd); *Metromedia Long Distance, Inc. v. Hughes,* 810 S. W. 2d 494, 499 (Tex. Civ. App.-San Antonio 1991, writ denied); *Southwestern Bell Telephone Company v. Public Utility Commission,* 615 S. W. 2d 947, 952 (Tex. Civ. App.-Austin 1981) writ ref'd n.r.e. 622 S. W. 2d 82

(Tex. 1981).

In that under the present system of justice, the right to be heard is of utmost importance, this court of appeal is being requested to vacate the order of dismissal.

The trial court erred in that there is no authority to dismiss an intervention pursuant to Rule 91a of the Texas Rules of Civil Procedure. The trial court has a number of options regarding a petition in intervention. It may (1) try the intervention claim (2) sever the intervention claim (3) order a separate trial on the intervention claim, or (4) strike the intervention for good cause. *Saldana*, 791, S. W. 2d at 320.

The intervenor may assert a claim if he has a legal or equitable interest in the lawsuit. (*Guaranty Federal Savings Bank v. Horseshoe Operating Co.*, 763 S. W. 2d 652 (Tex. 1990). The party opposing must file a motion to strike and then there must be a hearing. (*Saldana v. Saldana*, 791 S. W. 2d 316 (Tex. Civ. App.-Corpus Christi 1990, no writ)

The court set up no hearing for Intervenor's plea.

Because the court did not follow the options required by law, the appeals court should declare the dismissal order null and void.

Therefore, Appellants pray that this court vacate the dismissal order or, in the alternative, remand the case or reverse and render that the deeds are void.

### ISSUE NO. THREE

Did the Trial Court err by granting Appellees' Motion to Dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure in that Appellees did not fulfill the mandates of the Rule in that they failed to identify each cause of action it addressed, and the Rules requires that movant must state specifically the reasons the cause of action has no basis in fact or in law in that it is an abuse of discretion to allow Appellees not to follow the requirements of a rule in that the court lacks jurisdiction for it not to follow established procedures for pleas in intervention and/

18

or for Rule 91a of the Texas Rules of Civil Procedure?

## FACTS PERTAINING TO THE ISSUE

Appellees brought their motion pursuant to Rule 91a of the Texas Rules of Civil Procedure in their Motion to Dismiss Plea in Intervention. (CR v. 1 p. 99) There was never a hearing set for this aspect of the motion.

The only mention of this matter was in the hearing held on the 26th of November, 2014. (RR. v. 6 p. 20 l. 10-14) The order signed is the Order of Dismissal in which the Rule 91a motion is granted. (CR. v. 1 p. 135)

There is nothing in Appellants' pleading that is not totally believable by every reasonable person as required by Rule 91a.

## ARGUMENTS AND AUTHORITIES

There are reasons why a motion for leave to file late should be granted if the reasons were not intentional or a result of a conscious interference, both the result of an accident or mistake. There is usually no delay that would be harmful. *Carpenter v. Cimarron Hydrocarbons Corporation*, 98 S. W. 3d 682 (Tex. 2002). The Rule 91a is actually "mini-summary judgment motion." The trial court erred in denying Appellants' Motion for Leave to File Late response. (CR. v. 1 p. 113)(CR. v. 1 p. 139)

The focus of this point of error is Rule 91a of the Texas Rules of Civil Procedure; therefore, one should inquire as to the nature of a rule. In 1941, the Supreme Court adopted 1. the Texas Rules of Civil Procedure, Government Code §22.004; and 2. The Texas Rules of Civil Procedure have the same force and effect as statutes. *Missouri Pac. R.R. v. Cross*, 501 S. W. 2d 868, 872 (Tex. 1973). (Government Code §22.004(c)); *In re M. N.* 262 S.W. 3d 799, 802 (Tex. 2008).

Texas courts are bound to apply and interpret statutes and our constitution by strict compliance and strict, literal interpretation. This is especially so when the words are plain such as those set forth in Vernon's Ann. St. Const. art. 5, §7 and Tex. Government Code, §24.030(a). The court in *Porras v. Jefferson*, 409 S. W. 3d 804 (Tex. Civ. App.—Houston [14th Dist.] 2013)( no writ hist.) stated, "trial courts do not, in the absence of some extraordinary reason to, depart from those procedures, have the inherent authority to create their own ad hoc procedures." *In re Does 1-10*, 242 S. W. 3d at 818.

This court in *Liberty Mutual Insurance Co. v. Adcock*, 412 S. W. 3d 492 (Tex. 2013) held that

"Enforcing the law as written is a court's safest refuge in matters of statutory construction, and we should always refrain from rewriting text that lawmakers chose . . . " *Energy Gulf States, Inc. v. Summers*, 282 S. W. 3d 433, 443 (Tex. 2009). We review issues of statutory construction de novo, and our primary objective in construing a statute is to ascertain and give effect to the Legislature's intent. *Molinst v. Kimbrell*, 356 S. W. 3d 407, 411 (Tex. 2011). The plain meaning of the text, given the context of the statute as a whole. . ."

Trial courts must adhere to the mandates of the rules. Thus, in the case at bar, all motions, proceedings, arguments, all other matters must be heard. Each person should be given the opportunity by way of a hearing to be heard.

Appellees claimed they had filed a motion. (RR v. 6 p. 20 1.12) They mentioned Rule 91a in their motion to dismiss plea in intervention, but there was no motion. (CR. v. 1 p. 99)

Rule 91a of the Texas Rules of Civil Procedure has some requirements that "must" be met. Basically, it must identify each cause of action to which it is

20

addressed and "must state" specifically the reasons the cause of action has no basis in laws, no basis in fact, or both. A cursory viewing of Appellees' motion shows no such language.

Actually, no response is required only if there is a response, it must be filed no later than seven (7) days before the date of hearing, according to the strict reading of the rule.

Therefore as a matter of law, the order dismissing pursuant to Rule 91a of the Texas Rules of Civil Procedure cannot be upheld as a matter of law.

Therefore, Appellants pray that this court vacate the trial court's order and dismiss the case. In the alternative, Appellants pray that the court reverses the trial court's judgment in toto and declare the judgment the trial court should have rendered, i.e., that Intervenor may intervene.

## ISSUE NO FOUR

Did the Trial Court err by an abuse of discretion in that the order signed on December 15, 2014 is not a final order due to the lack of finality in that not all relief requested was not addressed, it was a dismissal order however, it gave affirmative relief which causes reversible error and was not final and the court granted Appellees' relief not requested by the pleadings and then without any presentation of evidence, the court gave validity to ownership rights to one which only had "bare legal" title to a property in which another individual, the Appellant, has ownership rights? Therefore, the Court of Appeals should vacate the order of dismissal or remand the case with instructions.

## FACTS PERTAINING TO THIS ISSUE

There are four (4) instances in which, through the use of pleadings, the Appellees asked the trial court for relief. The first one was their answer, special exceptions, counter claim and equitable relief request. By their special exceptions, they desired to know why the use of declaratory action and not trespass to try tittle. (There was a gift deed and no delivery and Appellants are asking the court to declare

21

them as owners by setting up a constructive trust.)

The second one is a motion for contempt for Appellant picking up the rents. This was filed June 16, 2014, (CR. v. 1 p. 45)

The hearing was held on the 25th of June, 2014, (RR. v. 3 p. 4 l. 25) and there was no evidence of any wrongdoing by Appellants. It was only from information and belief but no testimony. Then on the 20th of August, 2014, the court was informed about repairs, (RR. 4 p. 5 l. 8) and only the months of May and April the receiver did not collect. (RR. v. 4 p. 5 l. 24). However, the court would credit Appellant with the repair costs. (RR. v. 4 p. 10 l. 21) And Appellant had the receipts (RR. v. 4 p. 9 l. 8-10) He was then given an appointment with the receiver. (RR. v. 4 9 l. 23). Ironically, the court instructed Appellant that the receiver could not collect until the court signed the order. (RR .v. 2 p. 23 l. 4) The order was signed on May 8, 2014 (CR. p. 33)

The third time Appellees asked for anything was on a motion to dismiss action with prejudice for failure to comply with court order and termination of receivership. (CR. v. p. 92) From the instructions the court gave, Appellant could collect the rent up to May 8, 2014. (RR v. 6 p. 8 l. 17)

The fourth and last time Appellees requested or plead relief, was on October 20, 2014 when they filed Motion To Dismiss Plea In Intervention. This was pursuant to Rule 91a of the Texas Rules of Civil Procedure.

From the aforementioned, the order of dismissal materialized. In that Appellees had asked for a defamation cause of action. (CR. v. 1 p. 25) and they received from the dismissal order (CR v. 1 p. 136) The order that they were "free to dispose of any of the properties identified herein without further order of this Court."

The order included the following:

22

1. Dismissal for failure to cooperate with receiver;
2. Dismissal on the merits of Plea of Intervention;
3. Pleadings stricken for not explaining why a declaratory judgment action and not a trespass to try title; and
4. Because Appellant did not provide deeds and other instruments, although open to the public to copy, of his deeds, divorce decree, etc.

For said reasons, the order of dismissal was granted. There are various places in the record in which show that Appellant gave the court copies of the aforementioned instruments, however, they were not given to counsel, only to the court. (Marriage license: (RR. v. 2 p. 6 l. 17; p. 20 l 6)(RR v. 6 p. 23 l. 22) (divorce decree: RR v 2 p. 22 l. 21-22)(gift deeds: RR v. 2 p. 11 l. 21; v. 2 p. 9 l. 15—12 p. 12 l. 6-8; v. 6 p. 24 l. 6)

## ARGUMENT AND AUTHORITIES

The court did file its findings of fact and conclusion of law. (CR sup.)

Ironically, Appellees complained that it was improper to use a declaratory judgments action to prove ownership. However, the court declared that the Appellees could sell. Then, one may conclude that a declaratory judgment may be used. They never filed a trespass to try title lawsuit.

Ironically, the findings and conclusions do not include who is the owner. Therefore, one may conclude, if the judgment favors the Appellees, it is proper; if it favors Appellants, the pleadings should have been pursuant to a trespass to try title. Appellees may sell.

One must start with the basics. What is a judgment? The judgment is the official document announcing the resolution of the issues in the lawsuit. *Comet Aluminum Co. v. Dibrell*, 450 S. W. 2d 56, 58 (Tex. 1970). The judgment grants the winning party the relief it earned by its victory, *Jones v. Springs Ranch Co.*, 642 S. W. 2d 551,553 (Tex. Civ. App.—Amarillo 1982, no writ).

23

The most basic requirement of a judgment is that it must conform to the pleadings. The judgment must conform to the pleadings. Texas Rules of Civil Procedure 301; *City of Austin v. Castillo*, 25 S. W. 3d 309, 314 (Tex. Civ. App.—Austin 2000, pet denied); *Soto v. Sea-Road Int'l*, 942 S. W. 2d 67, 75 (Tex. Civ. App.—Corpus Christi 1997; writ denied). Even when a final judgment results from a settlement agreement, it must strictly comply with the terms of the agreement. *Keim v. Anderson*, 943 S. W. 2d 938, 946 (Tex. Civ. App.-El Paso 1997, no writ).

All of the documents or records have been reviewed in this issue and it shows that the order of dismissal does not conform to the pleadings. All of the interlocutory orders are only to last for the case, i.e. the receivership, the injunctions, the interpleader; therefore, this order does not qualify.

The order must be definite and certain. The judgment must be sufficiently definite and certain to define and protect the rights of the litigants. *Stewart v. USA Custom Paint & Body Shop*, 870 S.W.2d 18, 20 (Tex.1994). If a judgment is not definite, it must provide a means of determining rights so the ministerial officers can execute on the judgment. *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437. 440 (Tex. Civ. App.—Houston [1st Dist.] 2000, no pet.); *Kimsey v. Kimsey*, 965 S.W.2d 690, 694 (Tex. Civ. App.—El Paso 1998, pet. denied). If a judgment is not definite and its meaning cannot be ascertained, it is not a final judgment. *Hatton v. Burgess*, 167 S.W.2d 260, 262-63 (Tex. Civ. App.—Beaumont 1942, writ red w.o.m.) Judgment was void because it did not provide sufficient information to identify land awarded to prevailing party. *American Casualty. & Life Insurance. Co. v. Boyd*, 394 S.W.2d 685, 688 (Tex. Civ. App.—Tyler 1965, no writ) An unintelligible order has no legal effect.

The order alludes to the fact that in that Appellant did not give opposing

24

counsel certified copies of the deeds, the lawsuit was dismissed. If indeed the Appellees believed the properties belonged to them, they would go and get the deeds. They are at the county clerk's records.

One cannot tell if this is a final appealable judgment. The judgment should state whether it is intended to be a final or partial judgment. A statement that the plaintiff takes nothing or that the case is dismissed makes the judgment final as long as there are no other claims by other parties. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). But language about dismissal should not be used in a proceeding that resolves the case on the merits (e.g., a summary judgment); it should be used only in cases in which dismissal is appropriate. The judgment should state:

(1) "This judgment finally disposes of all parties and all claims and is appealable." *In re Daredia*, 317 S.W.3d 247, 248 (Tex.2010); *Lehmann*, 39 S.W.3d at 206. This is the preferred statement to include in any judgment intended to be final. *In re Daredia*, 317 S.W.3d at 248, or

(2) "This judgment disposes of all parties and all claims in this cause of action and is therefore final."
E.g. id at 248-49 the term this is an appealable judgment should be used.

A judgment is not final just because it is captioned a "final judgment," because the word "final" appears somewhere in the order, because it awards costs, or because it says it is appealable. *Lehmann*, 39 S.W.3d at 205.

However, this judgment is labeled "Order of Dismissal."

When a court dismisses a case, the order should be drafted to dismiss the suit and nothing else. If the order purports to make any decision on the merits, it is reversible error. *Garcia-Marroquin v. Nueces City Bail Bond Bd.* I S. W. 3d 366, 379 n. 8 (Tex. Civ. App.—Corpus Christi 1999, no pet.); *Alvarado v. Magic*

25

*Valley Elec. Co-op, Inc.* 784 S. W. 2d 729, 733 (Tex. Civ. App.—San Antonio 1990, writ denied). For example, the statement "plaintiff take nothing" constitutes a decision on the merits. *Garcia-Marroquin*, 1 S. W. 3d at 379, n. 8; *De la Garza v. Express-News Corp.* 722 S. W. 2d 251, 253 (Tex. Civ. App.— San Antonio 1996, no writ)

In the case at bar, the court granted affirmative relief, no one had asked for it in the pleadings; however, the court granted ownership rights to Appellees. (CR. v. 1 p. 136)

Wherefore, Appellants request that this Court grant this issue and vacate the order of dismissal or in the alternative, reverse and render, order that the law of gifts must be applied.

## ISSUE NO. FIVE

Did the Trial Court abuse its discretion by not obligating Appellees to notify the Appellants of whatever motion was to be heard in that the Trial Court violated Appellants' personal and property rights by not informing Appellants what each hearing was to be about even after Appellants expressed their objections in writing and during the hearings?

## FACTS PERTAINING TO THIS ISSUE

Appellant received orders for several hearings; however, he was not notified what the hearings were for. At the hearing, he informed the Court that he had not received any documentation as to what was being spoken about. (RR. V. 2 p. 19 l. 24-p.20 l. 2) The Court, of course, misunderstood and the court felt he was referring to what he had placed in the record, i.e., the decree, marriage license, the deed.

In that the court seemed to not understand, he filed on May 29, 2014, his objections to Defendant's proposed order on sustaining Defendant's exceptions (CR. v. 1 p. 37)

26

On June 27, 2014, Appellant filed his Response to Defendants' Motion for Contempt or in the Alternative, Motion for Disgorgement of Rents and Plaintiff's Motion to Set Aside Order Granting Injunction and Appointment of Receiver. (CR v. 1 p. 63). Again, he informed the court that the Appellees had not given him any copies of what was being presented. (see statement of facts for list.)

By September 9, 2014, Appellant again informed the court that he is not being informed as to what the hearing is to be about. (CR. v. 1 p. 78) One does not know what has to be done in order to receive notice of what is to be discussed at the hearings.

The response from the Court was to grant a date for final trial. Although the Rules of Judicial Administration (Rule 6) states that the case should be given 18 months for jury trials. Measured from appearance date, the trial was set for December 11, 2014, that is less than nine (9) months.

One may readily see why this appeal was filed.

## ARGUMENT AND AUTHORITIES

The problem is that Appellant does not speak English. (RR. V. 2 p. 6 l. 8-9). That portion belonged to his lawful and wedded wife. (RR. v. 2 p. 4 l. 10-24, p. 5, 6 and 7 through l. 14). The only real evidence was when Appellant Arriaga clarified what he had done as to the rents. (RR. v. 6 p. 17 l. 23)

Other than that, there was never again taken meaningful testimony. There was no rebuttal: that means that what was said, is the evidence. Appellee Arriaga, Jr. took an oath (RR. v. 6 p. 19 l. 6); however, his testimony was incomprehensible. There was no right of cross examination given. And those facts were applied to the plea in intervention (RR. v. 6 p. 20 l. 4-13). The court in *National Loan Investors, L. P. v. Robinson*, 98 S. W. 3d 781 (Tex. Civ. App.—Amarillo, 2003) (pet. den.) stated,

27

"Evidence is not conclusive unless it was admitted by the court and the opposing party failed to rebut it. *Transport Insurance Company v. Faircloth*, 898 S. W. 2d 269, 275 (Tex. 1995)." There is no place in all of the record which rebuts Appellant's testimony.

The Constitution of the United States, Amendments IV, V, and XIV guarantees that no property shall be taken without due course of law. The Constitution of the State of Texas also gives this guarantee in Article I, Section 13 and gives the right to go to court pursuant to the "open-courts" doctrine and to obtain due process.

Therefore, the individual citizen should feel safe and secure in that one may exist without fear that the courts will close their doors on said individual and someone would just automatically become the new owner of one's property.

The court in *In re Knott*, 118 S. W 3d 899 (Tex. Civ. App.-Texarkana 2003, no writ hist.) stated "The protection of one's right own property is said to be one of the most important purposes of government. That right has been described as fundamental, natural, inherent, inalienable, not derived for the legislature and as preexisting even constitutions." *Eggemeyer v. Eggemeyer*, 554 S. W. 2d 137,140 (Tex. 1977) (citing *Pennsylvania Coal Co. v. Mahon*, 260 U. S. 393, 43 S.Ct. 158, 67 L.Ed.322, 28 A.L.R. 1321 (1922); 16 AM JUR 2D Constitutional Law §362 (1964). Our constitution forbids the deprivation of a citizen's life or property except by due course of law. TEX. CONST. art. I §16 and §19 . This constitutional protection requires not only procedural but also substantive due course of law. *Eggemeyer*, 554 S. W. 2d at 140 "

The court in *In the Interest of C.W., S.V.R., and L.L.C.*, 65 S. W. 3d 353 (Tex. Civ. App.—Beaumont 2001)(no writ hist.) stated that ". .our system of justice

28

comprehends due process to include notice and an opportunity to be heard." In the case of *Pandozy v. Shamis* 254 S. W. 3d 596 (Tex. Civ. App.-Texarkana 2008) mand. den. the court recognized that "in a summary judgment hearing, the trial court's decision is based on written pleadings and written evidence rather than live testimony. TEX. R. Civ. P. 166a(c). That can mean one cannot cross-examine. If Appellees would have cross-examined, it would be axiomatic to conclude that there would be a fact issue. Then, if there is a fact issue, there must be a trial because one has a right to a jury. That is why affidavits should be with personal knowledge; however, no affidavits were offered. *University of Texas M.D. Anderson Cancer Center v. King*, 417 S. W. 3d 1 (Tex. Civ. App.-Houston [14th Dist.] 2013) (no writ hist.)

Texas courts are bound to apply and interpret statutes and our constitution by strict compliance and strict, literal interpretation. This is especially so when the words are plain such as those set forth in Vernon's Ann. St. Const. art. 5, §7 and Tex. Gov't Code, §24.030(a). The court in *Porras v. Jefferson*, 409 S. W. 3d 804 (Tex. Civ. App.—Houston [14th Dist.] 2013)( no writ hist.) stated "trial courts do not, in the absence of some extraordinary reason to depart from those procedures, have the inherent authority to create their own ad hoc procedures." *In re Does* 1-10, 242 S. W. 3d 805, 818 (Tex. Civ. App.-Texarkana 2007)(no writ hist.)

This may be summed up in what the court in *In re Brilliant*, 86 S. W. 3d 680 (Tex. Civ. App.—El Paso, 2002) (no writ hist.) stated, "A trial court's failure to comply with the rules of notice in a contested case deprives a party of the constitutional . . . to voice her objections in an appropriate manner, and results in a violation of fundamental due process. *Platt v. Platt*, 991 S. W. 2d 481, 483 (Tex. Civ. App.—Tyler 1999, no pet.)"

29

Applying these laws to the case at bar, if an individual is not notified before a hearing, that individual's due process rights are being violated; therefore, any order emanating from that scenario should be declared null and void. Appellants pray for such and asks this court to vacate the order of dismissal.

## ISSUE NO. SIX

Did the court err by not allowing evidence to be received and to be developed which would resolve the issue of law as to the law of gifts, deeds, and interspousal transfers of property and thereby the court failed to apply the law on gifts and as a matter of law the gift has failed and thereby the court of appeals should vacate order of dismissal in that it is an abuse of discretion not to apply the law?

## FACTS PERTAINING TO THIS ISSUE

From discussions, one may conclude that Appellant never gave Appellees not even a "dime out of these properties." (RR. v. 2 p. 10 l. 22) That can only mean one thing; no delivery. And no delivery means no gift. As Appellant Arriaga stated, "The part that I was single. They lied to me because I don't read English." (RR. v. 2 p. 6 l. 5-9) Appellant intended to deliver, but he never did. (RR. v. 2 p. 10 l. 13)

One must keep in mind that this was a gift.

## ARGUMENT AND AUTHORITIES

There are special requirements on gifts. Appellant started with signing a gift deed. (RR v. 2 p. 8 l. 13) (CR v. 1 p. 07 et seq.) And he stated that he intended to give the property to Appellees and the court understood. (RR. v. 2 p. 5 l. 13) Therefore, the starting place should be with, what is a gift.

Black's Law Dictionary 5th Edition, 1979, defined gift as follows:

"**Gift.** A voluntary transfer of property to another made gratuitously and without consideration. Essential requisites of "gift" are capacity of donor, intention of donor to make a gift, completed delivery to or for donee, and acceptance of gift by donee."

Without these elements being fulfilled, there is no gift. There was no

30

consideration and it was gratuitously given. The donor, Appellant is a stable individual (does not know English, but stable, hardworking and thrifty); therefore, has capacity of being the donor. He had the intention to give as may be seen by his statements. The next element is delivery.

Here, Appellant had not even given a "dime" out of the property. (RR. v. 2 p. 10 l. 23) With no delivery, there is no gift. Therefore, the gift idea is not there for the present. The last element is acceptance. In the case at bar, Appellees took and sold; that is theft, not acceptance.

It is incumbent to review the nuances of gifts within a family.

Property acquired by either spouse by a gift is separate property. Tex. Const. art. 16 §15; Tex. Fam. Code §3.001(2). A gift is a voluntary transfer of property to another made gratuitously and without consideration. *Wells v. Wells*, 251 S. W. 3d 834, 839 (Tex. Civ. App.—Eastland 2008, no pet.(; *Magness v. Magness*, 241 S. W. 3d 910, 912 (Tex. Civ. App.-Dallas 2007, pet denied); *Hilley v. Hilley*, 342 S. W. 2d 565, 569 (Tex. 1961). Three elements are required to establish the existence of a gift; (1) intent to make a gift, (2) delivery of the property; and (3) acceptance of the property. *In re Marriage of Moncey*, 404 S. W. 3d 701,710 (Tex. Civ. App.-Texarkana 2013, no pet.); *Wells*, 251 S. W. 3d at 839, *Magness*, 241 S. W. 3d at 912. The intent must exist at the time of the transfer, not at a later time. (e.g. at the time of divorce). *In re Marriage of Moncey*, 404 S. W. 3d at 710; *Wells*, 251 S. W. 3d at 839. A party can establish intent to make a gift by presenting evidence that the gift-giver intended to make an immediate and unconditional divestiture of her ownership interest in the property and to unconditionally vest those interest in the recipient of the gift. *Reaves v. Reaves*, No. 11-11-00026-C. (Tex. Civ. App. – Eastland 2012) (memo op. 8-31-12) (see App. V) a gift to both spouses, such as a

31

wedding gift, jointly gives each spouse an undivided one-half separate-property interest in the gift. *Roosth v. Roosth*, 889 S. W. 2d 445,457 (Tex. Civ. App.-Houston [14th Dist.] 1994, writ denied) *Jones v. Jones*, 804 S. W. 2d 623, 627 (Tex. Civ. App.—Texarkana 1991, no writ)

One can see why an individual with limited knowledge of the English language could not comprehend what he was signing. Appellant never intended for the real property to be his separate property.

One can understand that real property acquired by purchase can be either separate or community property, depending on the time and circumstance of the purchase. Real property gets its character at the time the purchase contract is signed. *Carter v. Carter*, 736 S. W. 2d 775, 779 (Tex. Civ. App.—Houston [14th Dist.] 1987, no writ). This rule applies to all types of contract for the purchase of real property: contracts for deeds, lease-option agreements, earnest-money contracts, and installment land contracts. *Dawson v. Dawson*, 767 S. W. 2d 949,951 (Tex. Civ. App.-Beaumont 1989, no writ) *Roach v. Roach*, 672 S. W. 2d 524, 530-31 (Tex. Civ. App—Amarillo 1984, no writ) *Wierzchula v. Wierzchula*, 623 S. W. 2d 730,732 (Tex. Civ. App.-Houston [1st Dist.] 1981, no writ) *Riley v. Brown*, 452 S. W. 2d 548, 551 (Tex. Civ. App.—Tyler 1970, no writ).

There is a difference in property rights if the property is bought. Appellants bought the property and not the Appellees. (RR. . 2 p. 5 l. 17-19).

**Before marriage**. Real property before marriage is separate property. *Dawson*, 767 S.W. 3d at 951. This presumption can be rebutted by showing that the spouses did not furnish the consideration for the purchase in equal shares, Id at 205-06; *Dawson v. Dawson*, 767 S. W. 2d 949 (Tex. Civ. App.—Beaumont 1989) (no writ hist.) Property deeded to both spouses was still separate property of husband, who actually purchased property before marriage.

32

However, the most important thing to consider is that just because a deed or an instrument has been signed, it can still be changed. Equity will prevail.

Under the parol-evidence rule, the introduction of extrinsic evidence to contradict the express recitals in the deed is prohibited, unless a party presents evidence of fraud, mistake, or accident in the insertion of the recital. *Bahr v. Kohr*, 980 S. W. 2d 723, 727 (Tex. Civ. App.-San Antonio 1998, no pet.)

The law is quite clear here and not what Appellees espouse that what is signed may not be changed. (RR. v. 2 p. l. 12)

Therefore, the court erred in that procedure does not prevail over justice. In the case at bar, Appellant presented fraud, mistake and accident therefore, the laws are on his side to be allowed to present his grievance in front of a court of competent jurisdiction and be afforded meaningful hearings.

Wherefore, Appellants pray that this court vacate the order of dismissal of the trial court, in the alternative, remand the case back to the trial court with instructions inter alia to follow the law of gifts.

## CONCLUSION

One may see that any one of these issues would fulfill the requirements of Rule 44 of the Texas Rules of Appellate Procedure in that each one shows that they caused the rendition of an in improper judgment and/or probably prevented the Appellants from properly presenting the case to the court of appeals.

## PRAYER

**WHEREFORE PREMISES CONSIDERED**, Appellants pray that this Court of Appeals conclude and declare that the errors committed by the trial court, singularly and in conjunction with each other, caused the rendition of an improper judgment and/or prevented the Appellants from properly presenting their case to the court and Appellants were denied their rights of due process and did not receive relief in due course of law.

Furthermore, Appellants pray that the court recognizes that Appellants have been denied due process of law and thereby Appellants' constitutional rights, both personal and property rights, were violated and that Appellants may proceed pursuant to the Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.

As a matter of law, an order of dismissal cannot grant any affirmative relief; therefore, this is reversible error.

Therefore, this court is requested that it vacate the trial court's order of dismissal; or reverse and render that the gift had not been delivered therefore, the gifts fail and the owners are the Appellants. In the alternative, Appellants pray this Appeal Court order the court below to properly resolve the case, declaring the judgment not final and all costs be taxed to Appellees.

Appellants pray for any other relief at law or in equity that Appellants may be justly entitled to receive.

Respectfully submitted,

Law Office of Juan Angel Guerra
1021 Fair Park
Harlingen, Texas  78550
956-428-1600
956-128-1601 Fax
juanangelguerra1983@gmail.com
By:_____ /s/_____
    Juan Angel Guerra
    State Bar No. 08581320
    Attorney for Appellant

34

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been mailed by via fax 956-423-4976 on this the _24th_ day of <u>June,</u> 2015, to Gene McCullough, P. O. Box 2244, Harlingen, Texas 78551

<u>/s/</u>
Juan Angel Guerra

CAUSE NO 13-15-00038-CV
IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI/EDINBURG

ANTONIO ARRIAGA AND INEZ LARA ROSALES, APPELLANTS
VS.
OBDULIA MARTINEZ ARRIAGA, ANTONIO MARTINEZ ARRIAGA, JR.,
AND REYNA LUISA MARTINEZ ARRIAGA, APPELLEES

On Appeal from the 197TH DISTRICT COURT
WILLACY COUNTY, TEXAS
Trial Court Cause No. 2014-CV-0100-A

CERTIFICATE OF COMPLIANCE

I, the undersigned, hereby certify that the total amount of words stated by the computer program not counting those areas not to be counted, in the following:

Total 14,962

SIGNED on this the 24th day of June, 2015.

Respectfully submitted,

Law Office of Juan Angel Guerra
1021 Fair Park
Harlingen, Texas 78550
956-428-1600
956-128-1601 Fax
juanangelguerra1983@gmail.com

By:_____/s/_____

Juan Angel Guerra
State Bar No. 08581320
Attorney for Appellant

36

CAUSE NO 13-15-00038-CV
IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI/EDINBURG

ANTONIO ARRIAGA AND INEZ LARA ROSALES, APPELLANTS
VS.
OBDULIA MARTINEZ ARRIAGA, ANTONIO MARTINEZ ARRIAGA, JR.,
AND REYNA LUISA MARTINEZ ARRIAGA, APPELLEES

On Appeal from the 197TH DISTRICT COURT
WILLACY COUNTY, TEXAS
Trial Court Cause No. 2014-CV-0100-A

APPENDIX

Respectfully submitted,

Law Office of Juan Angel Guerra
1021 Fair Park
Harlingen, Texas 78550
956-428-1600
956-128-1601 Fax
Juanangelguerra1983@gmail.com

By:_____/s/_____
Juan Angel Guerra
State Bar No. 08581320
Attorney for Appellant

37

# APPENDIX

I.    Final Order – Appealed

II.   Register of Actions

III.  Findings of Facts and conclusion of Law

IV.   Laws

V.    Case Law: ***Reaves v. Reaves***, No. 11-11-00026-CV
      (Tex. Civ. App.-Eastland 2012) (memo op. 8-31-12)

STATE OF TEXAS       }

COUNTY OF CAMERON      }

I, hereby certify that all the foregoing copies of the above mentioned documents are true and correct copies, and are all incorporated by reference as if fully copied within the body of the brief.

_____
Juan Angel Guerra

**SWORN, SUBSCRIBED AND ACKNOWLEDGED** by Juan Angel Guerra before me on the ___ day of June, 2015.

_____
NOTARY PUBLIC

NOTARY PUBLIC
STATE OF TEXAS

OFELIA HERNANDEZ
My Commission Expires
June 25, 2018

# APPENDIX I

| | | |
|---|---|---|
| ANTONIO ARRIAGA,<br>    Plaintiff | §<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | 197TH JUDICIAL DISTRICT |
| OBDULIA MARTINEZ ARRIAGA,<br>ANTONIO MARTINEZ ARRIAGA,<br>JR. AND REYNA LUISA MARTINEZ<br>ARRIAGA,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | WILLACY COUNTY, TEXAS |

## ORDER OF DIMISSAL

ON NOVEMBER 26, 2014, the Motion to Dismiss for Failure to Cooperate with Receiver, Motion to Dismiss Plea in Intervention pursuant to Rule 91a of OBDULIA MARTINEZ ARRIAGA, ANTONIO MARTINEZ ARRIAGA, JR., and REYNA LUISA MARTINEZ ARRIAGA, Defendants herein, was heard before this court. Plaintiff appeared in person. Defendants appeared in person and through their attorney, Gene McCullough. Intervenor failed to appear.

Based upon the pleadings, records, documents filed by counsel, and the arguments of counsel at the hearing, THE COURT FINDS AS FOLLOWS:

A.    ANNETTE C. HINOJOSA, a licensed attorney, (hereinafter called "Receiver") was appointed as receiver to collect all rent monies and other monies paid by the occupants of the properties identified below. That Receivership is hereby terminated. Receiver shall be paid a fee of $1,500.00 for her services from the proceeds on deposit in the registry of this Court. The balance of the funds on deposit in the registry of this Court shall be paid forthwith by the Clerk to Gene McCullough, Trustee, as attorney for the Defendants.



FILED
11:35 a.u.
DEC 15 2014



Gilbert Lozano, Dist. Clerk, Willacy Co.
By _____ Deputy

1

Properties:

Lots Numbers Thirty-one (31) and Thirty-two (32), in Block eleven (11), Townsite of Raymondville, Willacy County, Texas, including all improvement's situated thereon;

Lots Numbered Eight (8), Nine (9), and Ten (10), Block 31, Townsite of San Perlita, Wiillacy County, Texas;

Lots Numbers Eleven (11), Twelve (12), Thirteen (13), Fourteen (14), and Fifteen (15), Block Number Five (5), of the Colonia Victoria Addition, Number One (1), to the City of Raymondville, Willacy County, Texas;

Lots Three (3), Ten (10), Eleven (11), and Twelve (12), Block One (1), Arriaga Subdivision, city of Raymondville County of Willacy, Texas, according to the official map or plat thereof;

Lots Five (5), and Twelve (12), Block Two (2), Arriaga Subdivision, City of Raymondville, County of Willacy, Texas, according to the official map or plat thereof;

Lot Number Three (3), Block Number Seventy-nine (79), Townsite of Raymondville, Willacy County, Texas, according to the official map or plat thereof;

Lots Numbers Twenty-four (24), Twenty-five (25), and Twenty-six (26), Block Number Seven (7), Colonia Hidalgo Addition to the City of Raymondville, according to the official map or plat thereof;

Lots Thirty-one (31) and Thirty-two (32), Block Seven (7), Townsite of Raymondville, Willacy County, Texas.

B.      Plaintiff's pleadings are hereby stricken inasmuch as the Plaintiff failed to amend his pleadings pursuant to Defendants' Special Exceptions urged before this Court, and sustained pursuant to Order signed on May 8, 2014.

C.      Defendants are free to dispose of any of the properties identified herein without further Order of this Court. The Lis Pendens filed by Plaintiff against the properties and recorded on or about March 24, 2014 in the Willacy County Records is of no further force and effect.

D.      Plaintiff shall refrain from any further collection of any monies on the above

described properties;

E.    Plaintiff was to to provide to Defendants' counsel certified copies of the following:  Divorce Decree and every Gift Deed to his children, along with the Deeds vesting title to these properties.  Those documents were never provided;

F.    Intervenor's claims are dismissed pursuant to Rule 91a.

**SIGNED** and **ENTERED** on the ____ day of _____, 2014.


_____
PRESIDING JUDGE

XC: 12/16/14

xc:    Gene McCullough, P. O. Box 2244, Harlingen, Texas 78551-2244
Antonio Arriaga, 294 West San Francisco, Raymondville, Texas 78580
Annette C. Hinojosa, 155 N. 3rd Street, Raymondville, TX 78580
Inez Lara Rosales, 2955 32nd Street, Brownsville, Texas 78520

133

# APPENDIX II

| Home ⌄ | Cases ⌄ | Parties ⌄ | Search ⌄ | Reports ⌄ | Letters ⌄ | Maintenance ⌄ | Calendar ⌄ | Support | Logout |

## View All Events

**New Case**

**View/Edit Case**

**Defendant/Respondent**

**Plaintiff/Petitioner**

**Other Party**

**Other Primary Party**

**Attorney**

**Bond**

**Cash Bond**

**Court Registry**

**Child Support**

**Events**

**Court Setting**

**Fee/Fine**

**Installments**

**Payment**

**Bill of Cost**

**Preliminary Court Costs**

**Case Summary Report**

**Location History**

Cause Number:
**2014-CV-0100-A**

Court:
**197th District Court**

File Location:

Filing Date:
**03/07/2014**

| Civil Case Type(s) | Action Date | Disposition Date | Disposition Type |

**1. Declaratory Judgment    03/07/2014**

Style:
**Antonio Arriaga Vs Obdula Martinez Arriaga, Antonio Martinez Arriaga Jr and Reyna Luisa Martinez Arriaga**

Enter another Event

Publish PDF document from multiple images.

View all

select all                                                                                    ⌄

Select

## All Events

| # | Type | Date | Description | Image | Pages | Vol/Page |
|---|------|------|-------------|-------|-------|----------|
| 1. | Original Petition | 03/07/2014 | Original Petition for Declaratory Judgment | 122061.tif | 9 | |
| 2. | Notice of Lis Pendens | 03/07/2014 | Notice of Lis Pendens | 122062.tif | 2 | |
| 3. | Receipt | 03/07/2014 | Receipt for cc and service | 122073.tif | 1 | |
| 4. | Citation Issued | 03/10/2014 | Citation Issued 03/10/2014 to Obdulia Martinez Arriaga; Antonio Martinez Arriaga, Jr.; and Reyna Luisa Martinez Arriaga (so) | 122138.tif | 6 | |
| 5. | SUPPLEMENTAL PETITION | 03/19/2014 | First Supplement Original Petition for Declaratory Judgment | 122590.tif | 5 | |
| 6. | Notice of Lis Pendens | 03/19/2014 | Notice of Lis Pendens (Supplement) | 122592.tif | 2 | |
| 7. | Return Citation-Served | 03/24/2014 | Return Citation-Served 03/21/2014 on Obdulia Martinez Arriaga, Antonio Martinez Arriaga, Jr., and Reyna Luisa Martinez Arriaga Filed 03/24/2014 | 122860.tif | 6 | |
| 8. | Answer and Counterclaim | 04/03/2014 | Defendants' Original Answer, Special Exceptions, Counterclaim and Application for Permanent Injunction w/tr ltr (w/OSH) | 123466.tif | 4 | |
| 9. | Receipt | 04/03/2014 | Receipt | 123467.tif | 1 | |
| 10. | Receipt | 04/03/2014 | Receipt for counterclaim | 123514.tif | 1 | |
| 11. | Order Setting Hearing | 04/03/2014 | Order Setting Hearing | 123520.tif | 1 | |
| 12. | Order Setting Hearing | 04/03/2014 | Order Setting Hearing on Defendants' Request for Injunction Hearing | 123521.tif | 1 | |
| 13. | Letter | 05/01/2014 | Letter dated 04/30/2014 from Gene McCullough enclosing Orders | 124604.tif | 1 | |
| 14. | Other | 05/01/2014 | Marriage License | 124605.tif | 1 | |
| 15. | Notice of Hearing | 05/01/2014 | Notice of Resetting Hearing | 124606.tif | 1 | |

| 16. | Order | 05/08/2014 | Order Sustaining Defendants' Special Exceptions to Plaintiff's Petition | 124928.tif | 1 | |
|---|---|---|---|---|---|---|
| 17. | Order Granted | 05/08/2014 | Order Granting Injunction and Appointment of Receiver | 124929.tif | 3 | |
| 18. | Objections | 05/09/2014 | Plaintiff's Objection to Defendants' Proposed Order on Sustaining Defendants' Special Exceptions and Order Granting Injunction and Appointment of Receivership (w/Fiat) | 124931.tif | 3 | |
| 19. | Notice of Lis Pendens | 05/14/2014 | Notice of Lis Pendens (Second Supplement) | 125321.tif | 4 | |
| 20. | Fiat | 05/19/2014 | Fiat | 125724.tif | 1 | |
| 21. | Motion for Contempt | 06/16/2014 | Defendants' Motion for Contempt or in the Alternative Motion for Disgorgement of Rents w/tr ltr (w/Orders) | 127064.tif | 14 | |
| 22. | Motion For Continuance | 06/24/2014 | Motion For Continuance; Affidavit in Support of Plaintiff Motion for Continuance (w/Orders) | 127393.tif | 4 | |
| 23. | Response | 06/24/2014 | Plaintiff's Response to Defendants' Motion for Contempt or in the Alternative Motion for Disgorgement of Rents and Plaintiff's Motion to Set Aside Order Granting Injunction and Appointment of Receiver | 127394.tif | 4 | |
| 24. | Order Setting Hearing | 07/01/2014 | Order Setting Hearing | 127795.tif | 1 | |
| 25. | Receipt | 08/12/2014 | Receipt for copies | 129337.tif | 1 | |
| 26. | Receipt | 08/15/2014 | Receipt for rental pymts received from Atty Hinojosa | 129584.tif | 4 | |
| 27. | Receipt | 08/21/2014 | Receipt for rental pymts receiced from Atty Hinojosa by Mr. Arriaga | 129946.tif | 2 | |
| 28. | Receipt | 08/22/2014 | Receipt for rental pymts received from Atty Hinojosa | 129980.tif | 2 | |
| 29. | Receipt | 08/22/2014 | Receipt for bal due from prior pymt (rentals) | 130011.tif | 2 | |
| 30. | Objections | 09/09/2014 | Plaintiff's Objections to the Court's Order Setting Hearing on Defendants' Request for Injunction Hearing and Order Setting Hearing for Defendant's Special Exceptions | 130696.tif | 5 | |
| 31. | Motion for Trial Setting | 09/10/2014 | Defendant's Motion for Trial Setting (w/Order) | 130717.tif | 3 | |
| 32. | Order Setting Hearing | 09/15/2014 | Order Setting Hearing on Defendants' Motion for Trial Setting | 131161.tif | 1 | |
| 33. | Fiat | 09/16/2014 | Fiat | 131240.tif | 1 | |
| 34. | Memo | 09/18/2014 | Memo | 131332.tif | 1 | |
| 35. | Plea in Intervention | 09/19/2014 | Plea in Intervention | 131350.tif | 3 | |
| 36. | Order Re-Setting Hearing | 09/23/2014 | Order Resetting Hearings | 131523.tif | 1 | |
| 37. | Motion to Dismiss | 10/16/2014 | Motion to Dismiss Action with Prejudice for Failure to Comply with Court Order and for Termination of Receivership | 132740.tif | 3 | |
| 38. | Receipt | 10/23/2014 | Receipt for rental pymts given to Atty Hinojosa | 133054.tif | 2 | |
| 39. | Receipt | 10/30/2014 | Receipt for rental pymts | 133394.tif | 2 | |
| 40. | Motion to Dismiss | 10/30/2014 | Motion to Dismiss Plea in Intervention | 133397.tif | 3 | |
| 41. | Order Setting Hearing | 10/30/2014 | Order Setting Hearing | 133416.tif | 1 | |
| 42. | Order Setting Hearing | 10/30/2014 | Order Setting Hearing | 133418.tif | 1 | |
| 43. | Response | 11/20/2014 | Plaintiff's Responses to Defendants' Motion to Dismiss Action with Prejudice for Failure to Comply with Court Order and for Termination of Receivership | 134328.tif | 7 | |

| 44. | Affidavit | 11/20/2014 | Affidavit | 134329.tif | 2 | |
|---|---|---|---|---|---|---|
| 45. | Motion for Leave | 11/24/2014 | Intervenor's Motion for Leave to Late File Response to Motion to Dismiss Plea in Intervention; Affidavit in Support of Intervenor's Motion | 134609.tif | 4 | |
| 46. | Response | 11/24/2014 | Intervenor's Response to Defendants' Motion to Dismiss Plea in Intervention | 134610.tif | 5 | |
| 47. | Fiat | 11/24/2014 | Fiat | 134655.tif | 1 | |
| 48. | Receipt | 11/26/2014 | Receipt for rental agreements | 134706.tif | 1 | |
| 49. | DOCKET ENTRY DISPOSITION | 12/03/2014 | DOCKET | 135009.tif | 5 | |
| 50. | Letter | 12/04/2014 | Letter | 135050.tif | 1 | |
| 51. | Request | 12/05/2014 | Request for Findings of Fact and Conclusions of Law on the Dismissal of the Lawsuit, Order Granting Motion to Strike Intervention, Order Stating Plaintiff's Failure to Comply with Court Order, Order Granting Special Exceptions, Order on Disgorgement of Rents, Order Granting Injunction and Appointment of Receivership | 135387.tif | 5 | |

# APPENDIX III

| | | |
|---|---|---|
| ANTONIO ARRIAGA, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | 4:51 p.m. |
| V. | § | 197TH JUDICIAL DISTRICT FILED |
| | § | |
| OBDULIA MARTINEZ ARRIAGA, | § | MAR 12 2015 |
| ANTONIO MARTINEZ ARRIAGA, | § | |
| JR. AND REYNA LUISA MARTINEZ | § | Gilbert Lozano, Dist. Clerk, Willacy Co. |
| ARRIAGA, | § | By _____ Deputy |
| Defendants. | § | WILLACY COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.     Findings of Fact

1.  Plaintiff (pro se) filed suit against Defendants on March 7, 2014.

2.  Defendant filed special exceptions, complaining that Plaintiff's original petition sought to use the declaratory judgment act to determine title to real property rather than pleading the matter as a trespass to try title cause.

3.  The Special Exceptions were heard on April 24, 2014. The Court Ordered Plaintiff to re-plead his original petition by May 10 to remedy the pleading, which sought to determine title to real property by way of declaratory judgment. If Plaintiff failed to amend the pleadings by that time, the court would strike each defective paragraph of Plaintiff's pleading. Plaintiff failed to amend his pleading.

4.  Defendant also filed a Request for Appointment of Receiver to collect rents from tenants in possession of the properties in question, along with a request for injunctive relief enjoining Plaintiff from collecting further rents on the following properties:

. Lots Numbers Thirty-one (31) and Thirty-two (32), in Block eleven (11), Townsite of Raymondville, Willacy County, Texas, including all improvement's situated thereon;

Lots Numbered Eight (8), Nine (9), and Ten (10), Block 31, Townsite of San Perlita, Wiillacy County, Texas;

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW Page- 1**

Lots Numbers Eleven (11), Twelve (12), Thirteen (13), Fourteen (14), and Fifteen (15), Block Number Five (5), of the Colonia Victoria Addition, Number One (1), to the City of Raymondville, Willacy County, Texas;

Lots Three (3), Ten (10), Eleven (11), and Twelve (12), Block One (1), Arriaga Subdivision, city of Raymondville County of Willacy, Texas, according to the official map or plat thereof;

Lots Five (5), and Twelve (12), Block Two (2), Arriaga Subdivision, City of Raymondville, County of Willacy, Texas, according to the official map or plat thereof;

Lot Number Three (3), Block Number Seventy-nine (79), Townsite of Raymondville, Willacy County, Texas, according to the official map or plat thereof;

Lots Numbers Twenty-four (24), Twenty-five (25), and Twenty-six (26), Block Number Seven (7), Colonia Hidalgo Addition to the City of Raymondville, according to the official map or plat thereof;

Lots Thirty-one (31) and Thirty-two (32), Block Seven (7), Townsite of Raymondville, Willacy County, Texas.

5. The injunction Order further contained the following language:

"Plaintiff and Defendants shall refrain from any further collection of any monies on the above described properties, subject to further orders of this Court;
Plaintiff is to provide to Defendants' counsel certified copies of the following within fifteen (15) days of the date of this Order: Divorce Decree and every Gift Deed to his children, along with the Deeds vesting title to these properties."

The Court recommended to Plaintiff that he retain counsel to assist him with this matter.

The Plaintiff failed to provide such documentation as Ordered by the Court.

6. Attorney Annette Hinojosa was appointed receiver.

7. Plaintiff was ordered to deliver any rents collected from tenants in his possession to Ms. Hinojosa.

8. On June 12, 2014 the Defendants filed their Motion for Contempt or in the Alternative Motion for Disgorgement of Rents. That matter was set for hearing on June 25, 2014. In response, the Plaintiff filed a Motion for Continuance of the hearing on June 24, 2014,

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW Page- 2**

requesting that the Court allow him more time to hire an attorney. The Plaintiff also filed a Response to the Motion for Contempt or in the Alternative Motion for Disgorgement of Rents. The basis for the response was that he had never received a copy of either the special exceptions filed by Defendants or the Application for Temporary Restraining Order and Appointment of Receivership which gave rise to the Injunction and Receivership. The hearing was continued at that time, but the Court admonished the Plaintiff that he must cooperate with the Receiver. The Court advised counsel for Defendants and Receiver to hand-deliver to Plaintiff a copy of the Order Granting Injunction and Appointment of Receivership immediately after the hearing. He was repeatedly admonished by the Court to cooperate with the receiver, and to refrain from interfering with the collection of rents. He failed to do so. Plaintiff did not retain counsel, although he requested time to do so.

9. On or about September 18, 2014, Inez Lara Rosales (pro se) filed a Plea in Intervention.

10. Defendant filed a Motion to Dismiss the Plea in Intervention Pursuant to Texas Rules of Civil Procedure 91a, on grounds that the Plea in Intervention, Inez Lara Rosales has no basis in law or fact. The matter was set for hearing on November 26, 2014. Intervenor failed to appear for argument, and the Motion to Dismiss was granted.

11. On or about October 15, 2014, the Defendants filed a Motion to Dismiss Action with Prejudice for Failure to Comply with Court Order and For Termination of Receivership. The grounds for the Motion were that the Plaintiff had "fail[ed] to comply with [the Order Granting Injunction and Appointment of Receiver] and verbal directions from the Judge to provide information to the Receiver."

12. A hearing was had on the Motion to Dismiss Action with Prejudice for Failure to Comply with Court Order and For Termination of Receivership on November 26, 2014. The Plaintiff appeared pro se. The Receiver, Annette Hinojosa, appeared in person. The

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW Page- 3**

CERTIFIED COPY

Defendants appeared in person and through counsel, Gene McCullough. The Court heard testimony from Receiver, Annette Hinojosa, that the Plaintiff had no complied with previous Orders from this Court to provide her information and rents previously collected, and had continued to interfere with her duties as Receiver.

13. On November 26, 2014, the Court also allowed Plaintiff to present any argument prepared on Plaintiff's "Objections to the Court's Order Setting Hearing on Defendant's Request for Injunction Hearing for Defendants' Special Exceptions." It was denied.

## II. Proposed Conclusions of Law

1. Venue in Willacy County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events giving rise to this lawsuit occurred in this County.

2. This court has jurisdiction over the parties because Defendants are Texas residents. The Defendants properly filed Special Exceptions pursuant to TRCP Rule 90 pointing out a defect in Plaintiff's pleading in that Plaintiff was seeking to determine title to real property by filing a Declaratory Judgment action pursuant to the Texas Supreme Court ruling in <u>Martin v. Ammerman</u>. <u>Martin v. Amerman</u>, 133 S.W.3d 262, 263-64 (Tex. 2004).

3. Despite having months to cure the defect, Plaintiff refused to cure.

4. The Court granted the Injunction prayed for by Defendants pursuant to TX CPRC, section 65.001.

5. The Court granted the Receivership prayed for by Defendants pursuant to TX CPRC, section 64.001, et seq. to take charge of the properties in controversy and collect the

rents generated therefrom. The rules of equity govern such appointment pursuant so TX CPRC, section 64.004.

6. The Defendant Repeatedly refused to comply with verbal and written Orders of the Court, and violated the Injunction granted on April 23, and entered on May 8, 2014.

7. This Court has jurisdiction under principals of equity to enforce its Orders. CPRC, section 65.001, et seq.

8. Plaintiff failed to amend its pleadings, leaving this Court with no cause of Action pending before it on behalf of Plaintiff.

9. Rule 91a applies to Intervenor's claims, and the Court found that they were not reasonably supported by law or fact.

## III. Relief Granted

This Court entered the Order of Dismissal dated December 15, 2014. The Order dissolved the Receivership, discharged Annette Hinojosa as Receiver, Struck Plaintiff's Pleadings for failure to amend pursuant to Order Entered May 8, 2014. The Court dissolved the lis pendens filed by Plaintiff in the Property records of Willacy County relating to the properties referenced in the suit, and dismissed Intervenor's claims pursuant to Rule 91a TRCP.

SIGNED THIS 12th day of _March_, 2015.

_Migdalia Lopez_
JUDGE PRESIDING

XC: 03/13/15
H. McCullough
A. Hinojosa
J. Rosales
A. Arriaga

A TRUE COPY OF THE ORIGINAL
I CERTIFY, THIS _13th_ DAY OF
_March_ 20 15

GILBERT LOZANO, DISTRICT CLERK
WILLACY COUNTY TEXAS
BY _____ DEPUTY

# APPENDIX IV

# AMENDMENTS
# TO THE CONSTITUTION
# OF THE
# UNITED STATES OF AMERICA

## Amendment V.

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb, nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use without just compensation.

## ARTICLE [IV]

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

# ARTICLE XIV

**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 2.** Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Section 3.** No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Section 4.** The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Section 5.** The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

## Art. 1

### § 13. Excessive bail or fines; cruel and unusual punishment; remedy by due course of law

Sec. 13. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

### § 16. Bills of attainder; ex post facto or retroactive laws; impairing obligation of contracts

Sec. 16. No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

### § 19. Deprivation of life, liberty, etc.; due course of law

Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

## Art. V

### §7. JUDICIAL DISTRICTS; DISTRICT JUDGES; TERMS OR SESSIONS; ABSENCE, DISABILITY OR DISQUALIFICATION OF JUDGE

The State shall be divided into judicial districts, with each district having one or more Judges as may be provided by law or by this Constitution. Each district judge shall be elected by the qualified voters at a General Election and shall be a citizen of the United States and of this State, who is licensed to practice law in this State and has been a practicing lawyer or a Judge of a Court in this State, or both combined, for four (4) years next preceding his election, who has resided in the district in which he was elected for two (2) years next preceding his election, and who shall reside in his district during his term of office and hold his office for the period of four (4) years, and who shall receive for his services an annual salary to be fixed by the Legislature.

The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law. He shall hold the regular terms of his Court at the County Seat of each County in his district in such manner as may be prescribed by law. The Legislature shall have power by General or Special Laws to make such provisions concerning the terms or sessions of each Court as it may deem necessary.

The Legislature shall also provide for the holding of District Court when the Judge thereof is absent, or is from any cause disabled or disqualified from presiding.

## ARTICLE 16

### GENERAL PROVISIONS

### ART. 16, §15. SEPARATE & COMMUNITY PROPERTY

All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse; and laws shall be passed more clearly defining the rights of the spouses, in relation to separate and community property; provided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse or future spouse; spouses also may from time to time, by written instrument, agree between themselves that

the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse; if one spouse makes a gift of property to the other that gift is presumed to include all the income or property which might arise from that gift of property; spouses may agree in writing that all or part of their community property becomes the property of the surviving spouse on the death of a spouse; and spouses may agree in writing that all or part of the separate property owned by either or both of them shall be the spouses' community property.

## CHAPTER 26. STATUTE OF FRAUDS

### B&CC §26.01. PROMISE OR AGREEMENT MUST BE IN WRITING

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to:

(1) a promise by an executor or administrator to answer out of his own estate for any debt or damage due from his testator or intestate;

(2) a promise by one person to answer for the debt, default, or miscarriage of another person;

(3) an agreement made on consideration of marriage or on consideration of nonmarital conjugal cohabitation;

(4) a contract for the sale of real estate;

(5) a lease of real estate for a term longer than one year;

(6) an agreement which is not to be performed within one year from the date of making the agreement;

(7) a promise or agreement to pay a commission for the sale or purchase of:

(A) an oil or gas mining lease;

(B) an oil or gas royalty;

(C) minerals; or

(D) a mineral interest; and

(8) an agreement, promise, contract, or warranty of cure relating to medical care or results thereof made by a physician or health care provider as defined in Section 74.001, Civil Practice and Remedies Code. This section shall not apply to pharmacists.

History of B&CC §26.01: Acts 1967, 60th Leg., vol. 2, ch. 785, §1, eff. Sept. 1, 1967. Amended by Acts 1977, 65th Leg., ch. 817, §21.01, eff. Aug. 29, 1977; Acts 1987, 70th Leg., ch. 551, §1, eff. Aug. 31, 1987; Acts 2005, 79th Leg., ch. 187, §1, eff. Sept. 1, 2005.

See also *O'Connor's Texas COA*, "Statute of Frauds," ch. 54, p. 1381.

## CPRC §37.004. SUBJECT MATTER OF RELIEF

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

(c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.

## CPRC §37.006. PARTIES

(a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

(b) In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

## CPRC §37.008. COURT REFUSAL TO RENDER

The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding.

## CHAPTER 129. AGE OF MAJORITY

| | |
|---|---|
| §129.001 | Age of majority |
| §129.002 | Rights, privileges, or obligations |
| §129.003 | Alcoholic Beverage Code prevails |

### CPRC §129.001. AGE OF MAJORITY

The age of majority in this state is 18 years.

### CPRC §129.002. RIGHTS, PRIVILEGES, OR OBLIGATIONS

A law, rule, or ordinance enacted or adopted before August 27, 1973, that extends a right, privilege, or obligation to an individual on the basis of a minimum age of 19, 20, or 21 years shall be interpreted as prescribing a minimum age of 18 years.

SUBCHAPTER A. GENERAL RULES FOR
SEPARATE AND COMMUNITY
PROPERTY

§ 3.001. Separate Property

A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

§ 3.002. Community Property

Community property consists of the property, other than separate property, acquired by either spouse during marriage.

GOVERNMENT CODE

§ 22.004. Rules of Civil Procedure

(a) The supreme court has the full rulemaking power in the practice and procedure in civil actions, except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant.

(c) So that the supreme court has full rulemaking power in civil actions, a rule adopted by the supreme court repeals all conflicting laws and parts of laws governing practice and procedure in civil actions, but substantive law is not repealed. At the time the supreme court files a rule, the court shall file with the secretary of state a list of each article or section of general law or each part of an

article or section of general law that is repealed or modified in any way. The list has the same weight and effect as a decision of the court.

§ 24.030. Location of Court

(a) A district court shall sit in the county seat for a jury trial in a civil case. The commissioners court of the county may authorize a district court to sit in any municipality within the county to hear and determine nonjury trials in civil cases and to hear and determine motions, arguments, and other matters not heard before a jury in a civil case that is within the court's jurisdiction.

## CHAPTER 22. TRESPASS TO TRY TITLE

SUBCHAPTER A. GENERAL PROVISIONS

Section
22.001. Trespass to Try Title.


### SUBCHAPTER A. GENERAL PROVISIONS

#### § 22.001. Trespass to Try Title

(a) A trespass to try title action is the method of determining title to lands, tenements, or other real property.

(b) The action of ejectment is not available in this state.

## TITLE 10. MISCELLANEOUS BENEFICIAL PROPERTY INTERESTS

### SUBTITLE A. PERSONS UNDER DISABILITY

### CHAPTER 141. TRANSFERS TO MINORS

#### § 141.001. Short Title

This chapter may be cited as the Texas Uniform Transfers to Minors Act.

#### § 141.002. Definitions

In this chapter:

(1) "Adult" means an individual who is at least 21 years of age.

## TRAP 44. REVERSIBLE ERROR

**44.1** Reversible Error in Civil Cases.

(a) *Standard for reversible error.* No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment; or

(2) probably prevented the appellant from properly presenting the case to the court of appeals.

(b) *Error affecting only part of case.* If the error affects part of, but not all, the matter in controversy and that part is separable without unfairness to the parties, the judgment must be reversed and a new trial ordered only as to the part affected by the error. The court may not order a separate trial solely on unliquidated damages if liability is contested.

## TRCP 60. INTERVENOR'S PLEADINGS

Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party.

## TRCP 91a. DISMISSAL OF BASELESS CAUSES OF ACTION

**91a.1** Motion and Grounds. Except in a case brought under the Family Code or a case governed by Chapter 14 of the Texas Civil Practice and Remedies Code, a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

**91a.2** Contents of Motion. A motion to dismiss must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both.

**91a.3** Time for Motion and Ruling. A motion to dismiss must be:

(a) filed within 60 days after the first pleading containing the challenged cause of action is served on the movant;

(b) filed at least 21 days before the motion is heard; and

(c) granted or denied within 45 days after the motion is filed.

**91a.4** Time for Response. Any response to the motion must be filed no later than 7 days before the date of the hearing.

**91a.5** Effect of Nonsuit or Amendment; Withdrawal of Motion.

(a) The court may not rule on a motion to dismiss if, at least 3 days before the date of the hearing, the respondent files a nonsuit of the challenged cause of action, or the movant files a withdrawal of the motion.

(b) If the respondent amends the challenged cause of action at least 3 days before the date of the hearing, the movant may, before the date of the hearing, file a withdrawal of the motion or an amended motion directed to the amended cause of action.

(c) Except by agreement of the parties, the court must rule on a motion unless it has been withdrawn or the cause of action has been nonsuited in accordance with (a) or (b). In ruling on the motion, the court must not consider a nonsuit or amendment not filed as permitted by paragraphs (a) or (b).

(d) An amended motion filed in accordance with (b) restarts the time periods in this rule.

**91a.6** Hearing; No Evidence Considered. Each party is entitled to at least 14 days' notice of the hearing on the motion to dismiss. The court may, but is not required to, conduct an oral hearing on the motion. Except as required by 91a.7, the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59.

**91a.7** Award of Costs and Attorney Fees Required. Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award.

**91a.8** Effect on Venue and Personal Jurisdiction. This rule is not an exception to the pleading requirements of Rules 86 and 120a, but a party does not, by filing a motion to dismiss pursuant to this rule or obtaining a ruling on it, waive a special appearance or a motion to transfer venue. By filing a motion to dismiss, a party submits to the court's jurisdiction only in proceedings on the motion and is bound by the court's ruling, including an award of attorney fees and costs against the party.

**91a.9** Dismissal Procedure Cumulative. This rule is in addition to, and does not supersede or affect, other procedures that authorize dismissal.

## TRCP 166a. SUMMARY JUDGMENT

(a) **For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

(b) **For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) **Motion and Proceedings Thereon.** The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

(d) **Appendices, References and Other Use of Discovery Not Otherwise on File.** Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

(e) **Case Not Fully Adjudicated on Motion.** If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel, ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

## TRCP 300. COURT TO RENDER JUDGMENT

Where a special verdict is rendered, or the conclusions of fact found by the judge are separately stated the court shall render judgment thereon unless set aside or a new trial is granted, or judgment is rendered notwithstanding verdict or jury finding under these rules.

## TRCP 301. JUDGMENTS

The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any jury finding on a question that has no support in the evidence. Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law. Judgment may,

## TRCP 306a. PERIODS TO RUN FROM SIGNING OF JUDGMENT

1. **Beginning of periods.** The date of judgment or order is signed as shown of record shall determine the beginning of the periods prescribed by these rules for the court's plenary power to grant a new trial or to vacate, modify, correct or reform a judgment or order and for filing in the trial court the various documents that these rules authorize a party to file within such periods including, but not limited to, motions for new trial, motions to modify judgment, motions to reinstate a case dismissed for want of prosecution, motions to vacate judgment and requests for findings of fact and conclusions of law; but this rule shall not determine what constitutes rendition of a judgment or order for any other purpose.

**2. Date to be shown.** Judges, attorneys and clerks are directed to use their best efforts to cause all judgments, decisions and orders of any kind to be reduced to writing and signed by the trial judge with the date of signing stated therein. If the date of signing is not recited in the judgment or order, it may be shown in the record by a certificate of the judge or otherwise; provided, however, that the absence of a showing of the date in the record shall not invalidate any judgment or order.

**3. Notice of judgment.** When the final judgment or other appealable order is signed, the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail advising that the judgment or order was signed. Failure to comply with the provisions of this rule shall not affect the periods mentioned in paragraph (1) of this rule, except as provided in paragraph (4).

**4. No notice of judgment.** If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

**5. Motion, notice and hearing.** In order to establish the application of paragraph (4) of this rule, the party adversely affected is required to prove in the trial court, on sworn motion and notice, the date on which the party or his attorney first either received a notice of the judgment or acquired actual knowledge of the signing and that this date was more than twenty days after the judgment was signed.

**6. Nunc pro tunc order.** When a corrected judgment has been signed after expiration of the court's plenary power pursuant to Rule 316, the periods mentioned in paragraph (1) of this rule shall run from the date of signing the corrected judgment with respect to any complaint that would not be applicable to the original document.

**7. When process served by publication.** With respect to a motion for new trial filed more than thirty days after the judgment was signed pursuant to Rule 329 when process has been served by publication, the periods provided by paragraph (1) shall be computed as if the judgment were signed on the date of filing the motion.

## Rule 6. Time Standards for the Disposition of Cases

*Text of section effective until May 1, 2012.*
*See, also, text of Rule 6 effective May 1, 2012.*

District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

**a. Criminal Cases**

As provided by Article 32A.02, Code of Criminal Procedure.

**b. Civil Cases Other Than Family Law**

(1) *Civil Jury Cases*

Within 18 months from appearance date.

(2) *Civil Nonjury Cases*

Within 12 months from appearance date.

**c. Family Law Cases**

(1) *Contested Family Law Cases*

Within 6 months from appearance date or within 6 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

(2) *Uncontested Family Law Cases*

Within 3 months from appearance date or within 3 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

**d. Juvenile Cases**

In addition to the requirements of Title 3, Texas Family Code:[1]

(1) *Detention Hearings*

On the next business day following admission to any detention facility.

(2) *Adjudicatory or Transfer (Waiver) Hearings*

(a) Concerning a juvenile in a detention facility: Not later than 10 days following admission to such a facility, except for good cause shown of record.

(b) Concerning a juvenile not in a detention facility: Not later than 30 days following the filing of the petition, except for good cause shown of record.

(3) *Disposition Hearing*

Not later than 15 days following the adjudicatory hearing. The court may grant additional time in exceptional cases that require more complex evaluation.

(4) Nothing herein shall prevent a judge from recessing a juvenile hearing at any stage of the proceeding where the parties are agreeable or when in the opinion of the judge presiding in the case the best interests of the child and of society shall be served.

**e. Complex Cases**

It is recognized that in especially complex cases or special circumstances it may not be possible to adhere to these standards.

*Text of section effective May 1, 2012. See, also, text of Rule 6 effective until May 1, 2012.*

## Rule 6.1 District and Statutory County Courts.

District and statutory county court judges of the county in which cases are filed should, so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

**(a) Criminal Cases.** As provided by Article 32A.02, Code of Criminal Procedure.

**(b) Civil Cases Other Than Family Law.**

(1) *Civil Jury Cases.* Within 18 months from appearance date.

(2) *Civil Nonjury Cases.* Within 12 months from appearance date.

**(c) Family Law Cases.**

(1) *Contested Family Law Cases.* Within 6 months from appearance date or within 6 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

(2) *Uncontested Family Law Cases.* Within 3 months from appearance date or within 3 months from the expiration of the waiting period provided by the Family Code where such is required, whichever is later.

**(d) Juvenile Cases.** In addition to the requirements of Title 3, Texas Family Code:

(1) *Detention Hearings.* On the next business day following admission to any detention facility.

(2) *Adjudicatory or Transfer (Waiver) Hearings.*

# APPENDIX V.

Not Reported in S.W.3d, 2012 WL 3799668 (Tex.App.-Eastland)
**(Cite as: 2012 WL 3799668 (Tex.App.-Eastland))**

Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**

Court of Appeals of Texas,
Eastland.
John REAVES, Appellant
v.
Karen REAVES, Appellee.

No. 11–11–00026–CV.
Aug. 31, 2012.

On Appeal from the 52nd District Court Coryell County, Texas, Trial Court Cause No. CD–07–37323.
Jeffrey Allen Armstrong and Joe A. Rivera, for John Reaves.

Carol E. Prater and John H. Carney, for Karen Reaves.

Panel consists of WRIGHT, C.J., McCALL, J., and KALENAK, J.

**MEMORANDUM OPINION**
PER CURIAM.

**\*1** This is a marital property distribution case. At issue is the characterization of an annuity. The trial court entered a memorandum of decision and confirmed that the annuity was Karen Reaves's separate property. John filed a motion for reconsideration; Karen filed a motion for the trial court to sign a final divorce decree. Both motions were heard on the same day. The trial court entered a second memorandum of decision in which it declined to re-characterize the annuity and confirmed that the annuity was Karen's separate property. The court then entered a final decree of divorce. On appeal, John complains that the trial court erred when it con-

cluded that the annuity was Karen's separate property. He also claims that the trial court erred when it valued a vehicle that it awarded to Karen. We affirm.

I. *Background Facts*

John and Karen Reaves were married for twenty years. At the time of her marriage to John, Karen owned a Best of America America's Vision Annuity (the Vision Annuity). The annuity was funded by insurance proceeds that Karen received after the death of her previous husband. John was in active military service when he married Karen, first in the Air Force and then in the Army.

Karen suffered a debilitating back injury in June 2000, and John became the primary wage earner of the community. John was on active duty in the military, and it was his practice to leave Karen with a power of attorney when he was away on duty. In December 2002, John executed a power of attorney in which he appointed Karen as his attorney-in-fact. This power of attorney was set to expire on December 2, 2005.

As part of the course of treatment for her back injury, Karen's doctors prescribed a pain management program for her. The doctors prescribed Vicodin, Flexeril, and trazodone for pain relief; Activelle for depression; and Zyrtec, Nasonex, and Pantonol for allergy relief. However, the course of treatment was not effective. Karen did not get better and experienced difficulty when she walked.

Karen later saw another doctor, who suggested that she would benefit from a facet nerve ion injection. The treatment alleviated Karen's back pain. However, she went back to the doctor a week later with a new pain in her forearm and wrist. On July 3, 2003, the doctor increased Karen's prescription for Celebrex and refilled her prescription for Vicodin.

Karen and John met Dick Dwinell when they

Not Reported in S.W.3d, 2012 WL 3799668 (Tex.App.-Eastland)
(Cite as: 2012 WL 3799668 (Tex.App.-Eastland))

took a new member class taught by Dwinell at their church. In addition to his church activities, Dwinell was also a financial planner. On July 7, 2003, Karen and John met with Dwinell regarding their financial investments. Karen testified that she had not discussed transferring her annuity, nor had she spoken to Dwinell about her finances at all before she and John went to his office. Karen was presented with documents that were already filled out and ready for her signature. Karen did not know how Dwinell knew to have the transfer forms completed and ready for her signature. However, she did know that John had appointments with Dwinell outside her presence.

*2 Dwinell's notes reflect that there were times when he spoke to John outside Karen's presence. Dwinell noted that he asked John if they were sure about transferring the couple's IRAs and brokerage accounts from Fidelity to Oppenheimer funds and that John replied, "Yes, we are"; Karen was not present. Dwinell had an asset allocation/risk tolerance worksheet on file that was filled out by John on May 23, 2003. However, there was not one for Karen even though Dwinell admitted that "[t]here should have been one with Karen's signature on it as well." Karen introduced a document entitled "investment advisory recommendations" that was prepared for Karen and John by Dwinell on June 26, 2003. The document included the recommendation that Karen's Vision Annuity be changed to the Future Annuity II. In the corner of the document, there is a handwritten notation of a call to Best of America for a change of ownership and request for a letter of instruction. Dwinell testified that that call was made to Best of America regarding a change of ownership on July 1, 2003.

One of the documents presented to Karen for signature at the July 7 meeting was for the conversion of her Vision Annuity to a new product, the Best of America America's Future Annuity II (the Future Annuity). Karen testified that Dwinell led her to believe that the change was a beneficiary change that would enable John to receive the

money from the annuity faster in the event of her death. The letter of acknowledgment that Karen signed lists the benefits of the transaction as cost savings and the addition of a spousal rider. Karen testified that, when she raised concerns, Dwinell told her a story, which Dwinell called his "commingling horror story," to illustrate the consequences of the transaction in the event of a divorce. Dwinell told Karen that a judge would have to determine the outcome. But Karen testified that Dwinell eventually told her that a judge would rule in her favor because the money originated from the death of her first husband.

Karen testified that she did not understand the story that Dwinell used to explain the consequences of a divorce. However, she felt pressured, shamed, and "cajol[ed]" by Dwinell for asking about divorce, so she finally signed the papers. Karen also testified that her intention on that day was to streamline John's receipt of benefits in the event of her death, not to make a gift to John's separate property

Dwinell did not explain to Karen that she was giving John half of the annuity. Dwinell recommended the transaction for its supposed tax advantages. However, he never advised Karen and John of the potential gift tax consequences of the transaction. Dwinell testified that he did not consider it a gift when spouses transferred individual accounts into a joint account. He knew that the annuity was funded with a single premium purchased by Karen before the marriage and that it was in her name, but he did not remember if he investigated whether it was her separate property. Dwinell agreed that he owed both John and Karen an equal duty to look after their best interests. However, a change in ownership was of no benefit to Karen. Every potential advantage Dwinell gave for purchasing the new product could have been accomplished without making John an owner on the account. Dwinell made a $14,522.10 commission on the transaction.

*3 When asked what he did to make sure Karen was completely informed about the potential con-

Not Reported in S.W.3d, 2012 WL 3799668 (Tex.App.-Eastland)
(Cite as: 2012 WL 3799668 (Tex.App.-Eastland))

sequences of the transaction, Dwinell testified that he told Karen that, if there was a divorce, a judge would have to make a determination. The potential for loss was "[i]mplied," and he simply did not tell Karen that she essentially was gifting half of the account because he thought that, "if you have joint ownership, that should be understood." However, Dwinell also told Karen that she was the "lead owner" and that John was the "joint owner," but, at trial, pleaded ignorance about the legal significance of those terms. He did not explain to Karen that she would no longer have authority to make changes on the account without John's permission because "[s]he didn't ask the question about it."

Dwinell testified that he never would have recommended the change in ownership if he thought he was dealing with clients who were going to get divorced. However, during the meeting, Karen specifically asked about the consequences of a divorce. Dwinell's own notes from the meeting confirm this. Dwinell's response was to tell Karen a story about a man who willed all his belongings to his son but also remarried and changed his accounts to joint accounts with his new wife. The son was left out of the estate. This story illustrates the legal consequences of death, but not necessarily divorce. Dwinell also referred to the transaction as a "commingling" of the funds. But no funds were ever commingled.

In 2005, Karen discovered that John was moving money away from their joint accounts. She responded by using her power of attorney to execute an Owner Change Request form in which she asked to remove John as co-owner of the Future Annuity II. In January 2006, John retired from the U.S. Military, with twenty-two years and two months of service. Seventeen years and seven months of his service occurred during his marriage to Karen.

During the summer of 2006, John began to live and work in San Antonio; he returned home on the weekends. In December of that year, Karen found, among John's things, preliminary paperwork regarding a divorce between them. When Karen confronted him, John admitted that he was planning to file for divorce when his work contract was renewed. Karen filed her own divorce action in February 2007.

After it heard testimony and weighed the evidence, the trial court issued a memorandum of decision in which it characterized the Future Annuity II as Karen's separate property. It also listed specific findings as the basis for its decision. The trial court found that Karen's separate property solely funded the Future Annuity II, that it was not increased by any community funds, and that the current annuity was traceable to Karen's separate property. It also found that, at the time of the conversion, the annuity was the largest asset owned by either of the parties.

Additionally, the trial court found that it was not Karen's intent to make a gift of one-half of the annuity to John and that she did not understand that her actions would raise the presumption of a gift. The trial court also found that the primary discussion concerning the conversion was that it would reduce management fees and would create a spousal benefit for John. Karen's intent was to purchase an improved product. It was also significant to the trial court that there apparently was no discussion of estate planning, a common reason given for large gifts between spouses. John's and Karen's estates were not of a size to necessitate equalization of their estates for estate tax purposes.

*4 Finally, the trial court found that John took an active role in arranging the transaction. There was substantial direct contact, discussion, and decision-making that took place between John and Dwinell regarding the annuity conversion. There was a personal relationship between the three parties through their church.

The trial court found that the totality of the circumstances suggested that Karen was not fully informed of the possible effects of the conversion of the annuity and that she relied on John and Dwinell. The circumstances, it found, "indicate a situation in

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in S.W.3d, 2012 WL 3799668 (Tex.App.-Eastland)
(Cite as: 2012 WL 3799668 (Tex.App.-Eastland))

which it would not be appropriate to presume or imply an actual intent to make a gift with regard to [Karen]'s primary separate property asset which was the largest asset of her estate." At no time was Karen made aware that she was making a gift of one-half of the annuity to John as his separate property. The trial court found that there was not sufficient evidence to prove that the alleged gift was made knowingly, voluntarily, and fairly. The court made the specific finding that Karen's testimony and the other evidence were sufficient to rebut the presumption of a gift.

The court also valued each asset in the estate and made a division of those assets. The 2007 Honda Accord, the subject of appellant's third and fourth issues, was awarded to Karen and valued at $0.00.

## II. *Issues*

In his first two issues, John asserts that the trial court abused its discretion when it characterized the annuity as Karen's separate property because the evidence was legally and factually insufficient to rebut the presumption that she had gifted one-half of the annuity to him. In his third and fourth issues, he argues that the evidence was legally and factually insufficient to support the trial court's valuation of Karen's Honda Accord at $0.00.

## III. *Standard of Review*

Absent an abuse of discretion, the trial court's determination of the character of property and its distribution will not be disturbed on appeal. *Murff v. Murff,* 615 S.W.2d 696, 698–99 (Tex.1981); *Bigelow v. Stephens,* 286 S.W.3d 619, 620 (Tex.App.-Beaumont 2009, no pet.); *Wells v. Wells,* 251 S.W.3d 834, 838 (Tex.App.-Eastland 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has oc-

curred. *Sw. Bell Tel. Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965).

When an appellant challenges the trial court's order on legal or factual sufficiency grounds, we do not treat these as independent grounds of reversible error but, instead, consider them as factors relevant to our assessment of whether the trial court abused its discretion. *Wells,* 251 S.W.3d at 838 (citing *Boyd v. Boyd,* 131 S.W.3d 605, 611 (Tex.App.Fort Worth 2004, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient, we consider whether the court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the application of that discretion. *Id.* (citing *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.)).

**\*5** When the burden of proof at trial is clear and convincing evidence, as when a party attempts to rebut the "community presumption," we apply a higher standard of legal and factual sufficiency review. *See In re J.F.C.,* 96 S.W.3d 256, 265–66 (Tex.2002); *In re C.H.,* 89 S.W.3d 17, 25–26 (Tex.2002); *Moroch v. Collins,* 174 S.W.3d 849, 857 (Tex.App.-Dallas 2005, pet. denied). Clear and convincing evidence is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Moroch,* 174 S.W.3d at 857; *see also* TEX. FAM.CODE ANN. § 101.007 (West 2008). To meet the clear and convincing burden, the proof must "weigh more heavily than merely the greater weight of the credible evidence, but the evidence need not be unequivocal or undisputed." *Moroch,* 174 S.W.3d at 857–58.

## IV. *Presumptions*

Property possessed by either spouse during or on dissolution of the marriage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003(a) (West 2006). The party asserting that a certain piece of property is actually separate property must establish the separate character of the

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

property by clear and convincing evidence. *Id.* § 3.003(b). "The statutory presumption that property possessed by either spouse upon dissolution of the marriage is community is a rebuttable presumption and is overcome by evidence that a specified item of property is the separate property of one spouse or the other." *Moroch,* 174 S.W.3d at 856. To satisfy this burden, the spouse must trace "the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Moroch,* 174 S.W.3d at 856–57; *see also Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975).

Property of a spouse owned before marriage, and that acquired afterward by gift, devise or descent, is the separate property of that spouse. TEX. CONST. art. XVI, § 15; *see also* TEX. FAM.CODE ANN. § 3.001(2) (West 2006) (defining separate property as including property "acquired by the spouse during marriage by gift"). Property purchased during the marriage with monies that can be traced to a spouse's separate estate is characterized as separate property. *Pace v. Pace,* 160 S.W.3d 706, 711 (Tex.App.-Dallas 2005, pet. denied).

A second presumption arises when, as here, a spouse uses separate funds to purchase property during marriage and takes title to the property in joint names. In that event, there is a presumption that a gift was intended. *Harrison v. Harrison,* 321 S.W.3d 899, 902 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (citing *Cockerham,* 527 S.W.2d at 168). This presumption, however, can be rebutted by evidence that establishes there was no intent to make a gift. *Id.* A rebuttable presumption shifts the burden to produce evidence to the party against whom it operates. *Gen. Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex.1993). Once the burden is discharged and evidence contradicting the presumption has been offered, the presumption disappears and is not weighed or treated as evidence. *Id.*

V. *Analysis*
A. *Karen's Separate Property*
*6 John argues that the trial court abused its

discretion when it characterized the annuity as Karen's separate property because the evidence was legally and factually insufficient to rebut the presumption that she had gifted one-half of the annuity to him. Karen argues that the burden to prove donative intent shifted back to John when she rebutted the presumption of an interspousal gift. Both parties agreed that the annuity could be traced to Karen's separate property prior to the marriage. They also agreed that no community funds were ever added to the annuity. The issue, therefore, does not concern tracing but, rather, whether Karen had the donative intent necessary to make a gift to John.

Appellant argues that, because the instrument of conveyance contained a "separate property recital," the trial court should not have allowed parol evidence to rebut the presumption of gift. He cites *Roberts v. Roberts* for this proposition. *Roberts v. Roberts,* 999 S.W.2d 424, 432 (Tex.App.-El Paso 1999, no pet.). John points to part of the letter of acknowledgment of the Future Annuity II that Karen signed that contains a statement that she "ordered the liquidation and transfer [of an] investment [she] currently own[s]." This, he says, is a "separate property recital" because it states that the consideration for the Future Annuity II was Karen's separate property. He also cites the prospectus for the Future Annuity II because it states that "[j]oint owners each own an undivided interest in the contract."

In *Roberts,* as in most, if not all, other cases that deal with "separate property recitals," land was the property at issue and the instrument of conveyance was a deed. In addition, the cases cited in *Roberts* dealt with transactions whereby a wife received a deed that contained a recital that certain realty was to be her separate property *and* that it was paid for from her separate estate. *Henry S. Miller Co. v. Evans,* 452 S.W.2d 426, 430–31 (Tex.1970); *Messer v. Johnson,* 422 S.W.2d 908, 912 (Tex.1968). Additionally, the "separate property recitals" in these types of cases involve the use of specific terminology. "The cases which hold that

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

parol evidence is not admissible to contradict the express recitals in a deed, involve deeds which expressly state that property is conveyed to grantees as their *separate property* or for their *separate use.*" *Bahr v. Kohr,* 980 S.W.2d 723, 727 (Tex.App.-San Antonio 1998, no pet.). The decision to exclude parol evidence rests "not upon a recital of contractual consideration, but upon the fact that the instrument stipulated, in effect, that the beneficial ownership of the property was conveyed to the [spouse] for [his or her] separate use." *Jackson v. Hernandez,* 285 S.W.2d 184, 186 (Tex.1955).

This case is distinguishable from *Roberts* in that it does not involve a deed. The recitals to which John refers in this case do not state that John purchased his interest in the annuity with his own separate property. Also, the recitals are not that the property will be John's "separate" or "sole and separate" property or for his "separate use." The words "separate property" or "separate use" are never used in the contract, letter of acknowledgment, or prospectus. Though the contract uses the term "joint owner," which is defined in the prospectus as giving joint owners "an undivided interest in the contract," nothing in the documents indicates that there has been a conveyance from Karen to John or that any sort of transfer in beneficial ownership has occurred. The trial court found that Karen relied upon Dwinell's advice in the transaction, but when asked about the meaning of "undivided interest," Dwinell testified, "You're going way back in my memory banks" and "That's a legal term and I'm sorry." Because the contract does not expressly recite the character and use of the property, we find that the parol evidence rule does not prevent introduction of evidence to rebut the presumption of a gift.

*7 Karen testified that she did not intend to make a gift to John and that the only purpose of the transaction was to streamline John's receipt of benefits in the event of her death. Dwinell's handwriting on the "Variable Annuity/Variable Life Letter of Acknowledgement" seems to corroborate Karen's testimony. He listed the savings in annual charges and the spousal rider feature as the benefits of the transaction. We conclude that Karen rebutted the presumption when she testified that she did not intend to make a gift and when she provided an alternative reason for the transaction. *See Harrison,* 321 S.W.3d at 902. Because Karen discharged her burden and offered evidence that contradicted the presumption, the presumption disappears and is not weighed or treated as evidence. *Id.* The evidence is then evaluated as in any other case, and the presumption has no effect on the burden of persuasion. *Id.*

Thus, the burden was placed back on John. Generally speaking, one who is claiming the existence of a gift has the burden of proof on that issue. The burden to prove a gift is on the party who claims it. *Powell v. Powell,* 822 S.W.2d 181, 183 (Tex.App.-Houston [1st Dist.] 1991, writ denied). A gift is a "voluntary transfer of property to another made gratuitously and without consideration." *Wells,* 251 S.W.3d at 839 (citing *Hilley v. Hilley,* 342 S.W.2d 565, 569 (Tex.1961)). To establish the existence of a gift, the party must prove three elements: (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* (citing *Long v. Long,* 234 S.W.3d 34, 40 (Tex.App.-El Paso 2007, pet. denied)). A party establishes the requisite donative intent by, among other things, presenting "evidence that the donor intended an *immediate and unconditional* divestiture of his or her ownership interests and an immediate and unconditional vesting of such interests in the donee." *Nipp v. Broumley,* 285 S.W.3d 552, 559 (Tex.App.-Waco 2009, no pet.).

Even when applying a higher standard of legal and factual sufficiency review, there is ample evidence in the record to support the trial court's findings that Karen did not intend to give one-half of the annuity to John as a gift. Because of her medical condition, Karen relied upon John to read the documents and tell her of any major changes. John,

to consider the weight and credibility of the testimony and other evidence submitted in making its determination as to the valuations to be assigned to the various items of property." *In re Marriage of Jackson,* 506 S.W.2d 261, 266 (Tex.Civ.App.-Amarillo 1974, writ dism'd). When a trial court is asked to choose between different values, it has broad discretion in determining what values to assign. *See Williams v. Clark,* No. 03–03–00585–CV, 2004 WL 1171704, at *4 (Tex.App.-Austin May 27, 2004, no pet.) (mem.op.) ("faced with two conflicting versions of the value of a piece of the couple's property," the trial court did not abuse its discretion in choosing to believe one party over the other).

Karen and John gave roughly the same answer when asked about the debt secured by the vehicle. However, the trial court was given a range of potential values that depended upon the condition of the vehicle. The court was given no evidence about the vehicle's condition, other than the fact that John assigned it a value that corresponds with the Kelley Blue Book's "excellent" category. But, by all accounts, the value of the vehicle was very close to the balance due on the loan. The trial court had broad discretion and was not without sufficient basis for its decision. The trial court did not abuse its discretion by assigning the vehicle a net value of $0.00. John's third and fourth issues are overruled.

The judgment of the trial court is affirmed.

Tex.App.-Eastland,2012.
Reaves v. Reaves
Not Reported in S.W.3d, 2012 WL 3799668 (Tex.App.-Eastland)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

Karen, and Dwinell each testified that no one ever told Karen that she was giving John anything. The words "gift" or "give" were never used, and the fact that the transaction would give half of the account to John was not discussed by anyone. The testimony at the hearing made clear that Karen was ill-advised by Dwinell about the consequences of the transaction. We cannot say that the trial court abused its discretion. There was clear and convincing evidence of a lack of donative intent on Karen's part. We overrule appellant's first and second issues.

*B. Valuation of the Honda Accord*

**\*8** The trial court awarded Karen a 2007 Honda Accord. In his third and fourth issues, John argues that the evidence is legally and factually insufficient to support the trial court's ruling by which it assessed the value of the Honda Accord. The trial court valued the car, less the debt secured against it, at $0.00. John filed a motion for reconsideration in which he asked the trial court to revalue the car at $3,389.

Karen testified that the balance due on the car loan was $10,723.65. She introduced into evidence a statement from her credit union from June 27, 2008, several days prior to the hearing, showing an auto loan balance in the amount of $10,723.65. John testified that the loan amount was $11,800 and that the vehicle was worth $16,175. This was all of the evidence before the court as to the value of the vehicle and the debt secured by it.

However, the court also had in its files inventories from both parties that were filed after the trial hearing. According to John's First Amended Inventory and Appraisement, the vehicle had a value of $11,925. He attached to his inventory an estimate from the Kelley Blue Book website that gave a range of trade-in value estimates for the vehicle. The values were listed as $11,925 for a vehicle in excellent condition, $11,125 for a vehicle in good condition, and $9,850 for a vehicle in fair condition. The Kelley Blue Book valuations assume "an accurate appraisal of condition." Karen stated in her

first amended inventory that the 2007 Honda Accord had no community value.

Generally, unless a party's inventory is admitted into evidence, that party may not rely on the inventory as evidence on appeal. *Tschirhart v. Tschirhart,* 876 S.W.2d 507, 509 (Tex.App.-Austin 1994, no writ). However, in *Vannerson v. Vannerson,* the court concluded that, because sworn inventories are filed with the trial court and because the court may take judicial notice of its own papers, a trial judge may rely on information gleaned from sworn inventories even if such documents have not been formally introduced into evidence. *Vannerson v. Vannerson,* 857 S.W.2d 659, 671 (Tex.App.-Houston [1st Dist.] 1993, writ denied). In *Bradford v. Bradford,* the court held that the appellant was estopped to complain that documents were not admitted in evidence and so could not be considered on appeal when the trial court and parties treated the documents as if they were in evidence and the appellant voiced no objection below. *Bradford v. Bradford,* No. 14–94–00881–CV, 1995 WL 613060, at \*2 (Tex.App.-Houston [14th Dist.] Oct. 19, 1995, no writ) (not designated for publication).

In this case, the inventories were not formally introduced into evidence. They were filed after the final hearing, but prior to the trial court's memorandum of decision. John never objected to the trial court's use of the inventories as evidence below and does not make that argument on appeal. The issue was not mentioned in appellant's motion for reconsideration or during the trial court's hearing on the motion, even though the trial court stated, "[T]he parties did file amended inventories that were accepted by the Court in June of '09. And I understood that to be in addition to what evidence had been presented previously." We do not think that, in this instance, the trial court erred by relying upon information that it gleaned from the inventories. However, even if the trial court had erred, John has waived the issue.

**\*9** The trial court, as the factfinder, is "entitled